## SINGER v. CITIZENS' BANK OF HEADRICK.

No. 9737—Opinion Filed Oct. 12, 1920.

(Syllabus by the Court.)

**1. Trial—Demurrer to Evidence—Consideration.**

In passing upon a demurrer to the evidence the court does not weigh the evidence. The demurrer admits every fact which the evidence in the slightest degree tends to prove and all inferences and conclusions that may be reasonably and logically drawn from the same, and where there is any conflict in the plaintiff's evidence that would make any part of it unfavorable to plaintiff or sustain the defense, the court in passing upon such demurrer should consider such evidence withdrawn.

**2. Same.**

Where, after disregarding all evidence tending to sustain the defense, there is any evidence from which an inference favorable to the plaintiff may be reasonably although not necessarily drawn, the court will not invade the province of the jury by withdrawing from it the right to pass on the fact to be deduced from such inference.

**3. Banks and Banking—Suit Against Bank for Amount of Check Unpaid—Demurrer to Evidence.**

Record examined, and held, that the trial court erred in sustaining the demurrer to plaintiff's evidence.

Error from District Court, Jackson County; Frank Mathews, Judge.

Action by A. R. Singer against the Citizens' Bank of Headrick for recovery of money. Judgment for defendant, and plaintiff brings error. Reversed and remanded.

Geo. L. Zink, for plaintiff in error.

John D. Rogers, for defendant in error.

KANE, J. This was an action for the recovery of money, commenced by the plaintiff in error, plaintiff below, against the defendant in error, defendant below. Hereafter, for convenience, the parties will be designated "plaintiff" and "defendant," respectively, as they appeared in the trial court.

After the plaintiff had introduced his evidence and rested, the trial court sustained a demurrer thereto and rendered judgment for costs in favor of the defendant, to reverse which this proceeding in error was commenced.

The direct evidence introduced by the plaintiff tends to establish facts which may be briefly summarized as follows:

On the 6th day of July, 1916, one Byrum, who was engaged in the business of buying and selling cattle, made, executed, and delivered to the plaintiff his check drawn on the defendant bank in payment for the purchase price of 25 head of cattle. On the same date the plaintiff called up an officer of the bank by telephone and told him that he had sold Byrum 25 head of cattle for $830 and that he had received Byrum's check in payment for the same, but that he would not turn over the cattle to Byrum unless he was assured that the check would be paid when presented for that purpose. In this telephone conversation the officer of the bank told the plaintiff that Byrum was a customer of the bank; that the check was good and would be paid upon presentation, and that it was perfectly safe to deliver the cattle to Byrum. On the following day the plaintiff, acting upon the statements and representations made by the officer of the bank, delivered the cattle to Byrum, who immediately sold the same to Baker & Taylor, receiving payment therefor by check, which on the 8th day of July, 1916, was deposited to the account of Byrum in the defendant bank. The plaintiff deposited the Byrum check received by him in his local bank; said check, after passing through the ordinary routine as a cash item, was in due

course presented to the defendant bank for payment on the 19th day of July, 1916, and payment refused for want of funds, whereupon said check was protested and returned to the local bank, where it was taken up by the plaintiff, who paid the protest charges, amounting to $1.35. It further appears that Byrum had been a customer of the bank for some time and that it was his practice to buy cattle in small lots from farmers and others, giving his check in payment thereof as in the case at bar, and immediately sell the same and deposit the proceeds in the defendant bank; that up to the time of this transaction Byrum's checks had been paid upon presentation. It further appeared that at the time of the conversation between the plaintiff and the officer of the bank, Byrum's account was overdrawn something like $200, and that thereafter his indebtedness grew to something like $1,000, and that after Byrum made the last deposit herein mentioned the bank applied the same toward paying and discharging the indebtedness of Byrum to the bank; that about this time Byrum became wholly insolvent and disappeared from that part of the country, leaving considerable indebtedness to various persons unpaid. A statement of the account of W. Byrum at the Citizens' Bank of Headrick, Oklahoma, was made up from the individual ledger, and by agreement read into the record. This statement shows that during the month of July, 1916, Byrum had never had to his credit in the bank a sum to exceed $11.21 at any time up to July 6, 1916; that on July 6, 1916, his account was overdrawn to the extent of $202.23; that at no time was the balance to his credit in said bank sufficient to have paid the $830.00 check given by Byrum to the plaintiff; that on July 8. 1916, the proceeds of the Baker & Taylor check, $957.25, was credited to Byrum's account, which, after discharging his overdraft, left a balance to his credit of $658.52. The daybook or blotter disclosed the following bank items charged to the account of Byrum, in addition to the $202.23 overdraft taken out of the Baker & Taylor check; No. 6204, W. Byrum, $12.25; No. 6266, W. Byrum, $220.00; and No. 6383, W. Byrum, $20.00. The bills receivable record showed these items under such bank numbers to be as follows: No. 6204, note of W. Byrum to bank, dated March 25, 1916, payable November 1, 1916. No. 6266, note of W. Byrum to bank, dated April 27, 1916, payable on demand. No. 6383, note of W. H. Jones, dated July 6, 1916, due September 5, 1915, indorsed by Byrum.

It is conceded by the parties that this is not an action upon the check, and that the question of the oral acceptance of the check within the meaning of the word "acceptance" under the Negotiable Instrument Act is not within the issues of the case.

Counsel for plaintiff contends that the evidence is sufficient to support the plaintiff's recovery from the defendant bank upon two theories, which he states as follows:

1. "The first is, under the theory of an arrangement with the bank by a stock buyer, who bought live stock of the plaintiff, giving his check on the bank, selling the stock and depositing the proceeds to meet the cueck."

2. "If a bank officer in the apparent scope of his duty makes false and fraudulent assertions in reliance upon which a person acts to his injury, the bank is responsible therefor under the rules of equity, public policy, and sound morals."

On the first proposition counsel for plaintiff contends that the evidence was sufficient to bring his case within the rule announced in Ballard v. Home National Bank of Arkansas City, and Wood v. Same, 91 Kan. 91, 136 Pac. 935, wherein it was held that:

"Where a national bank through its president agrees with a customer, who is indebted to it, that if he purchases live stock, and in payment therefor gives checks on the bank, the checks will be paid, provided that by the time they are presented the drawer shall have resold the stock and deposited the proceeds with the bank, and in pursuance of such agreement the customer issues checks in payment for stock which he at once resells, delivering the proceeds to the bank, the holder of such checks can maintain an action for their amount against the bank, notwithstanding he did not know of the agreement and notwithstanding nothing was said, at the time the deposit was made. about the agreement or the application of the funds."

Counsel seem to concede that there was no direct evidence that there was a contract between Byrum and the bank such as was found to exist in the Kansas case, supra, but they contend that the existence of such a contract could be fairly inferred from a consideration of all the evidence. On the other hand, counsel for the defendant say:

"Plaintiff urges that such inference might be drawn from the evidence submitted herein; but we do not understand the rule of law to be that a case can be established by inferences, but the proof must be clear and convincing."

Ordinarily in a civil action tried upon the merits the plaintiff must establish his case by a preponderance of the evidence, and the court or jury must determine questions of fact by considering all the facts and circumstances of the case. This is the rule where the evidence is weighed by the court or jury. But in passing upon a demurrer to the evi-

dence the court does not weigh the evidence. The demurrer admits every fact which the evidence in the slightest degree tends to prove and all inferences and conclusions that may be reasonably and logically drawn from the same, and where there is any conflict in the plaintiff's evidence that would make any part of it unfavorable to plaintiff or sustain the defense, the court in passing upon such demurrer should consider such evidence withdrawn. In other words, when, after disregarding all evidence tending to sustain the defense, there is any evidence from which an inference favorable to the plaintiff may be reasonably although not necessarily drawn, the court will not invade the province of the jury by withdrawing from it the right to pass on the fact to be deduced from such inference. Wm. Cameron & Co. v. Henderson, 40 Okla. 648, 140 Pac. 404; St. L. & S. F. R. Co. v. Snowden, 48 Okla. 115, 149 Pac. 1083; Sartain v. Walker et al., 60 Okla. 258, 159 Pac. 1096; Ziska v. Ziska, 20 Okla. 634, 95 Pac. 254; Miller v. Marriott, 48 Okla. 179, 149 Pac. 1164.

Applying these rules to the cases at bar, we think it may be reasonably inferred from the evidence that an agreement existed between Byrum and the bank, something similar to the agreement shown in the Kansas case. Byrum was engaged in buying cattle from farmers and others, immediately selling the cattle again and depositing the proceeds derived therefrom in the bank, presumedly to meet his checks. Byrum, as in this case, usually sold the cattle thus purchased to Baker & Taylor, who were also cattle dealers on a larger scale, receiving their checks in payment, which he deposited with his bank as cash items. As Byrum's checks were always paid up to the time of the transaction involved in the case at bar, it would be reasonable to infer from this course of business, covering a considerable period of time, in connection with the telephone conversation heretofore detailed, that there was an agreement between Byrum and the bank upon which this course of business was based.

In the case of Goeken v. Bank of Palmer (Kan.) 163 Pac. 636, it was held:

"A cause of action is stated by a petition in an action against a bank for the amount of an unpaid check, in which the plaintiff alleges that in pursuance of an arrangement with the bank a stock buyer bought live stock from him, giving his check on the bank, selling the stock and depositing the proceeds to meet the check."

In that case it was contended by the bank that no cause of action was stated, because the acceptance of a check is not binding unless in writing, and because the payee of an unaccepted check cannot maintain an action thereon against the bank, for want of privity of contract. The Supreme Court, in answering this contention, said:

"The answer to both contentions is that the action is not brought merely upon the check, but upon the entire transaction."

Further discussing the same question, the court said:

"In accepting Schuette's check the plaintiff did not extend him any credit. He had a right to assume that provision had been made for the payment of the check, and if the fact proved otherwise to follow his property or its proceeds into the hands of any one who took either with notice of the facts. Bank v. Brown, 80 Kan. 520, 103 Pac. 102, 23 L. R. A. (N. S.) 824; note L. R. A. 1916C, 21. When Schuette sold the plaintiff's hogs, for which he had given only an unprotected check, the money which he received really belonged to the plaintiff, and was subject to be claimed by him. And his right was not lost by the deposit of the money with a bank, which knew of its origin and was co-operating with Schuette. The rules that a bank is not bound by its oral acceptance of a check and that it is not liable to the payee of an unaccepted check have no application to this situation."

Counsel for defendant contends that this court is not permitted to examine the evidence adduced at the trial upon the theory above outlined, for the reason that plaintiff's petition does not state facts sufficient to constitute a cause of action on this theory. This contention is wholly untenable. Where error in sustaining a demurrer to the evidence is assigned, it is the duty of this court to examine the evidence as it appears in the record before us. And where, as in the case at bar, the evidence is introduced without objection, it is but fair to assume that it was correctly admitted, and that it was responsive to the issues raised by the pleadings. If the cause had been submitted upon its merits and the plaintiff's petition was defective in the particulars now urged against it, he would have had the right to amend his petition, or the court could have treated it as amended to conform with the proof. Harn v. Patterson, 58 Okla. 694, 160 Pac. 924; Hamilton v. Blakeney, 65 Oklahoma, 165 Pac. 141.

We are also of the opinion that under the rules applicable to passing upon demurrers hereinbefore set out, there was sufficient evidence adduced to support the contention that actionable fraud had been committed. The officer of the bank made material representations when he told the plaintiff to deliver his cattle to Byrum, knowing that Byrum was

overdrawn at the bank and that his check would not be paid upon presentation. Plaintiff testified that, acting upon these representations, he delivered his cattle to Byrum. That the plaintiff suffered injury cannot be questioned. He lost the value of 25 head of cattle and the proceeds of the resale were appropriated by the bank for the purpose of extinguishing an account which the bank held against the person issuing the worthless check.

It was said in Van Winkle v. Henkle et al., 77 Okla. 34, 186 Pac. 942, quoting from Black on Rescission and Cancellation:

" 'Fraud' is said to be a generic term, which embraces all the multifarious means which human ingenuity can devise, and are resorted to by one individual to get an advantage over another by false suggestions or by the suppression of the truth. No definite and invariable rule can be laid down as a general proposition defining fraud, as it includes all surprise, trick, cunning, dissembling, and any unfair way by which another is cheated. The only boundaries definding it are those which limit human knavery."

In these circumstances it is only in very exceptional cases that the court is justified in saying that fraud was not established by the evidence, as a matter of law. Of course the court may do so where there is an entire lack of evidence to sustain some one or more of the elements of actionable fraud as defined in Wingate v. Render, 58 Okla. 656, 160 Pac. 614. We do not deem this to be that sort of a case.

For the reasons stated, the judgment of the court below is reversed, and the cause remanded, with directions to proceed in accordance with the views herein expressed.

All the Justices concur.