No. 24,409.

THE PIERCEVILLE STATE BANK, *Appellee*, v. THE GRAY COUNTY BANK (A. L. ENGLISH and J. C. KITCH), *Appellants*.

SYLLABUS BY THE COURT.

1. BANKING—*Agreement to Honor Checks of Cattle Dealer—Evidence.* Evidence that a dealer bought cattle, paying for them with checks drawn on a bank where he had no deposit sufficient to meet them, afterwards depositing a draft drawn by him against a commission company to which he shipped them for sale, that checks were paid by the bank without waiting for returns on the draft, and that this practice had continued for several years, has some tendency to show an agreement between the buyer and the bank that it would pay the checks at least to the amount of the draft.

2. SAME—*Check Drawn by Cattle Dealer—Dishonored—Cattle Dealer's Deposit.* The evidence is held sufficient to support a finding that in the situation indicated in the foregoing paragraph a check given in payment for cattle was presented before the bank had paid out on other cattle checks the amount of the draft deposited with it.

3. SAME — *Admission of Incompetent Evidence — Subsequently Cured.* The error in admitting evidence of former statements made at a specified time and place by a witness inconsistent with his testimony, for the purpose of impeachment, without having first asked him about them, is cured where he afterwards takes the stand and denies having made them.

4. SAME—*Action to Recover on Check—Real Party in Interest.* Where the payee of a check, which was given him under such circumstances that he has a cause of action for its amount against the bank on which it is drawn, cashes it at another bank to which, upon payment being refused, he gives his note to cover it, in an action brought by the bank holding the check against the drawee bank an objection that the plaintiff is not the real party in interest is not available where the payee is also made a defendant.

Appeal from Finney district court; CHARLES E. VANCE, judge. Opinion filed April 7, 1923. Affirmed.

*Edgar Foster*, and *Horace J. Foster*, both of Garden City, for the appellant.
*Fred J. Evans*, and *Ray H. Calihan*, both of Garden City, for the appellee.

The opinion of the court was delivered by

MASON, J.: The State Bank of Pierceville sued the Gray County State Bank, of Cimarron, upon a check (and facts connected with it) for $237.50 drawn by A. L. English upon the defendant bank in favor of J. C. Kitch and by him indorsed to the plaintiff. English and Kitch were made defendants. The plaintiff recovered, and the Gray County Bank appeals.

On May 31, 1920, English bought some cattle of Kitch, the price being $237.50, for which amount he gave the check referred to. At the time he had but $3.18 on deposit at the bank (which will hereafter be spoken of as the defendant). He purchased other cattle for which he gave checks on the defendant, making a total, as he estimated, of $1,500. He shipped the cattle to a commission company at Kansas City for sale, giving the defendant a draft on the consignee for $1,500, for which he was given credit on his deposit account. The cattle when sold at Kansas City netted only $1,329.23, and for this reason the draft was protested. This circumstance, however, is important only in the matter of amount, for the defendant at once applied for and received the proceeds of the cattle and as a matter of bookkeeping allowed the $1,500 credit it had given English to stand, entering a charge against him for the difference between that and what it had actually received. The plaintiff sent the Kitch check for collection, presentation being made June 5 and payment refused on the ground of lack of funds, other checks having already been presented and paid sufficient according to its version to exhaust the fund. The action was brought upon the theory that the defendant had an arrangement with English by which it agreed to pay checks which he might give for the purchase of cattle, the promise being for the benefit of the sellers and therefore available to them as a basis for suit.

In support of its claim that its demurrer to the evidence should have been sustained the defendant makes these contentions: (1) No competent evidence was produced tending to show that it had agreed to pay the Kitch check; (2) the only testimony having such tendency was improperly admitted; (3) the proceeds of the cattle were shown to have been paid out on other checks before the one in controversy was presented; and (4) the plaintiff is not the real party in interest.

1. With the exception of the item the competency of which is challenged, the plaintiff produced no direct evidence of an agreement by the defendant to pay the Kitch check or any of the others given for cattle, but relies upon inferences to be drawn from these facts testified to by the defendant's cashier and English, who were the only persons having first-hand knowledge of the matter and whom the plaintiff regarded as unfriendly witnesses: English drew the checks without having funds on deposit to meet them. The checks or a part of them were paid by the defendant without waiting

for returns on the draft. The method pursued in this instance was that by which English had transacted his cattle business for some two years. The bank prepared the draft upon information furnished by him. His business, as the defendant knew, was principally buying cattle from the farmers about Cimarron and shipping them. The defendant's cashier knew ("by supposition only," based upon past transactions of a similar nature) that the draft here involved was to cover a shipment of cattle English was then making or preparing to make to the commission company, and knew that his usual way of handling his cattle buying was to give his checks on the defendant to the persons from whom he bought, these checks being paid from the credit he obtained by depositing a draft covering the cattle shipped. From this practice the cashier knew when a draft was drawn and deposited the cattle he had bought were to be paid for out of the credit so obtained. This was the first time one of his cattle-shipment drafts was protested.

We think there was room for a reasonable inference that there was an agreement between English and the bank that it would pay the checks drawn by him in payment of cattle to be shipped for sale. That seems a natural explanation of his conduct in giving his checks in payment without any other provision for meeting them and of the bank's course in paying them without waiting to see if the drafts were met. The Oklahoma supreme court has said of a similar situation:

"We think it may be reasonably inferred from the evidence that an agreement existed between Byrum and the bank, something similar to the agreement shown in the Kansas case. [*Ballard v. Bank,* infra.] Byrum was engaged in buying cattle from farmers and others, immediately selling the cattle again and depositing the proceeds derived therefrom in the bank, presumedly to meet his checks. Byrum, as in this [the Ballard] case, usually sold the cattle thus purchased to Baker & Taylor, who were also cattle dealers on a larger scale, receiving their checks in payment, which he deposited with his bank as cash items. As Byrum's checks were always paid up to the time of the transaction involved in the case at bar, it would be reasonable to infer from this course of business, covering a considerable period of time, in connection with the telephone conversation heretofore detailed, that there was an agreement between Byrum and the bank upon which this course of business was based." (*Singer v. Citizens' Bank of Headrick,* 79 Okla. 267, 269.)

If such an agreement existed the defendant's liability to the owners of cattle to whom checks were issued in payment is established by prior decisions. (*Ballard v. Bank,* 91 Kan. 91, 136 Pac. 935, an-

notated in L. R. A. 1916 C 161; *Saylors v. Bank*, 99 Kan. 515, 163 Pac. 454; *Goeken v. Bank*, 100 Kan. 177, 163 Pac. 636.)

2. Some of the English checks paid by the defendant do not appear to have been given for cattle. The bank seems to have had some funds of English on hand when the Kitch check was presented after charging him with the difference between the amount of the draft and the actual proceeds of the cattle. Inasmuch as Kitch gave no credit to English, but accepted his check as cash, he was the real owner of the money received from the sale of his cattle except as it may have passed into the hands of an innocent holder. (*Goeken v. Bank*, supra.) But if an agreement existed between the defendant and English, as the jury and trial court must be deemed to have found, for the payment of the Kitch check and others given for cattle, to the extent of the face value of the draft, we think the amount of the judgment was warranted by the evidence, it not being clear that on that basis enough had been paid out on cattle checks to prevent the payment of the Kitch check in full.

3. When payment of the Kitch check was refused he caused English to be arrested, under the statute making it a public offense for a person to give a check knowing that he has no funds on deposit in "or credits with" the bank to meet it. (Gen. Stat. 1915, § 3471.) English was discharged upon a preliminary examination before a justice of the peace. Kitch testified in the present action that the defendant's cashier was the only witness for English in the criminal case, and as such said with reference to the check given to Kitch that he (the cashier) had authorized English to write checks for these cattle. The defendant urges that this testimony was not competent as an admission of the defendant because a corporation is only affected by such declarations of its officers as are made in the line of the declarant's official duty, and that the cashier in testifying in the criminal action necessarily was acting in a purely personal capacity. The point seems to be well taken. (22 C. J. 387, 388.) As we have already held, however, this item of evidence was not necessary to the plaintiff's case—that is, there was other evidence sufficient to support the judgment, and no error was committed in receiving it if it was admissible for any purpose. The cashier had testified, while being examined by the defendant's attorney, that he had no special agreement with English to honor checks for cattle he might buy. What he is alleged to have said while on the stand in the criminal action was inconsistent with this and was proper by

way of impeachment, except for the fact, which was made the basis of a timely objection, that his attention had not been called to the matter while he was upon the stand. Such an objection is of greater or less importance according to the circumstances in which it is made. Here we think it of no consequence whatever. The cashier was afterwards called as a witness for the defendant and testified that at the preliminary examination he had not given the testimony attributed to him by Kitch. The purpose of the requirement that before a witness can be impeached by showing prior contradictory statements his attention must be called to them, and to the time and place of their supposed making, is that he may not be taken unawares and led to deny something that he might have admitted if his memory had been refreshed. (2 Wigmore on Evidence, § 1025.) Any possibility of prejudice resulting from the omission to make the preliminary inquiry in this instance is eliminated by the witness afterward having been given an opportunity, of which he availed himself, to make the denial upon full information of the alleged time and place of his former statement. The fact that what he was represented to have said as a witness in the criminal case was not admissible as independent evidence does not preclude its use for the purpose of impeachment. (40 Cyc. 2707.)

4. The defendant's proposition that the plaintiff is not the real party in interest is based on the fact that Kitch gave the plaintiff his note (which is still unpaid) for the amount of the check in controversy, upon learning of its nonpayment, and therefore he is the only person who could maintain the action. The mere giving of the note would hardly restore the title of the check to the plaintiff. It has been suggested that in such a situation the indorsee could not sue, because the action is not upon the check but upon the chain of circumstances of which it is a part. (Brannan's Negotiable Instruments Law, 3d ed., § 189, p. 408.) It seems probable that the transfer of the check would operate as an equitable assignment of all the rights its payee possessed. These questions, however, need not be passed upon. Kitch was a party to the action and the defendant, being protected from any claim on his part, could suffer no substantial injury from the Pierceville bank being named as the plaintiff.

The judgment is affirmed.