**CITIZENS BANK OF HEADRICK v. SINGER.**

No. 13524—Opinion Filed June 10, 1924.

Rehearing Denied March 17, 1925.

1. Fraud — Latitude of Evidence — Conversations.

In determining the existence of fraud, any evidence, direct or circumstantial, which is competent by other rules of law, and which in the opinion of the court has a legitimate tendency to prove or disprove the allegations in issue, is admissible. Great latitude is allowed in the introduction of evidence, the extent of the investigation being largely in the discretion of the trial court, and conversation by either or both of the parties, which leads up to, and tends to explain the acts, and conduct, and the motive of either or both of the parties to the main transaction, and objections to such conversation on the grounds of being incompetent, irrelevant, and immaterial, are not favored. The conversation standing alone might be incompetent, but the whole transaction involving the alleged fraud may be given in evidence.

**2. Appeal and Error — Insufficiency of Instructions—Necessity for Requests.**

Where an instruction is correct as far as it goes, and it is urged by a party that under his theory of the case additional instructions should have been given, a reversal will not be had unless a supplemental instruction is requested by such contendant embodying such theory.

**3. Damages—Right to Recover Interest—Nonpayment of Check by Bank.**

Any person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law or by the act of the creditor from paying the debt. And in an action against a bank for damages, based on fraud and deceit, for failure to pay a check drawn on same, plaintiff is entitled to recover the legal rate of interest from the date of presentation, for payment of the check, until paid.

**4. Appeal and Error—Conflicting Evidence —Verdict.**

Where the evidence in a case is conflicting, the verdict of a jury thereon will not be disturbed, where the evidence and the inferences legitimately to be drawn therefrom support the verdict.

(Syllabus by Jones, C.)

Commissioners' Opinion, Division No. 3. .

Error from District Court, Jackson County; Frank Mathews, Judge.

Action by A. R. Singer against the Citizens Bank, Headrick. Judgment for plaintiff, and defendant appeals. Affirmed.

John D. Rogers, for plaintiff in error.

Geo. L. Zink, for defendant in error.

Opinion by JONES, C. This action was instituted in the district court of Jackson county by the plaintiff, appellee herein, against the defendant, appellant herein, for the recovery of money. Said cause was instituted on the 18th day of August, 1916. The facts as disclosed by the record show that on the 6th day of July, 1916, one Byrum, who was engaged in the business of buying and selling cattle, made, executed, and delivered to the plaintiff, Singer, his check drawn on defendant bank in payment for the purchase price of 25 head of cattle. On the same date the plaintiff called up B. M. Wooldridge, cashier of the defendant bank, by telephone, and told him that he had sold Byrum 25 head of cattle for $830, and that he had received Byrum's check in payment for the same, but that he would not turn over the cattle to Byrum until he was assured that the check would be paid, when presented for that purpose. In this telephone conversation the officer of the bank told the plaintiff that Byrum was a customer of the bank; that the check was good, and would be paid upon presentation, and that it was perfectly safe to deliver the cattle to Byrum. This is the substance of the conversation. On the following day the plaintiff, acting upon the statement and representation made by the officer of the bank, delivered the cattle to Byrum, who immediately sold the same to Baker & Taylor, receiving payment therefor by check, which, on the 8th day of July, 1916, was deposited to the account of Byrum in the defendant bank, at Headrick, Okla. The plaintiff deposited the Byrum check received by him in his local bank at Roosevelt. Said check, after passing through the ordinary routine as a check item was in due course presented to the defendant bank for payment, on the 19th day of July, 1916, and payment refused for want of funds, whereupon said check was protested, and returned to the local bank, where it was taken up by the plaintiff, who paid the protest charges amounting to $1.35. It further appears that Byrum had been a customer of the bank for some time, and that it was his practice to buy cattle in small lots from farmers, and others, giving his check in payment therefor as in the case at bar, and immediately sell the same and deposit the proceeds in the defendant bank; that up to the time of this transaction Byrum's check had been paid upon presentation. It further appears that at the time of the conversation between the plaintiff and the officer of the bank, Byrum's account was overdrawn something like $200, and that thereafter his indebtedness increased to about $1,000, and that after Byrum had made the last deposit herein mentioned, which amounted to $957.25, being the amount received from the sale of the Singer cattle to Baker and Taylor, the bank applied the greater portion of same toward paying and discharging the indebtedness of Byrum to the bank; that at about this time it seems that Byrum became wholly insolvent and absconded. A statement of the account of W. Byrum at the Citizens Bank of Headrick, Okla., defendant, was made up from the individual ledger and offered in evidence This statement showed that, during the month of July, 1916, Byrum never had to his credit in the bank a sum to exceed $11.21 at any time up to July 6, 1916; and on said date his account was overdrawn to the extent of $202.23; that at no time was the balance to his credit in said bank sufficient

to have paid the $830 check, given by Byrum to the plaintiff, Singer; that on July 8, 1916, the proceeds of the Baker and Taylor check of $957.25 was credited to Byrum's account, which after discharging his overdraft of more than $200 left a balance to his credit of $658.52. The day book or blotter of the bank disclosed the following bank items charged to the account of Byrum in addition to the overdraft taken out of the Baker and Taylor check: Item No. 6204, W. Byrum $12.25, No. 6266 W. Byrum, $220, and No. 6383 W. Byrum, $20. The bills receivable record showed these items under such bank numbers to be as follows: No. 6204, note of W. Byrum to bank dated March 25, 1916, payable Nov. 1, 1916; No. 6266, note of W. Byrum to bank dated April 27, 1916, payable on demand (and the record discloses that no demand had ever been made for the payment of same).; No. 6383, note of W. H. Jones dated July 6. 1915, due September 5, 1915, endorsed by Byrum.

Plaintiff's petition substantially alleges the facts, and the proof reasonably tends to establish the same, as above set forth. The petition, in addition to the facts as above stated, alleged, that the acts and conduct of the said Byrum, and the defendant bank in the conversion of the money received from the sale of the cattle of the plaintiff was in furtherance of an unlawful and willful plan, design, and intent to defraud and cheat this plaintiff.

This is the second time this case has been before this court. On the first trial in the lower court a demurrer to the evidence offered by plaintiff was interposed, on behalf of defendant, and sustained by the court, evidently upon the theory that it was an action on the check, and that an oral acceptance or guarantee of payment of the check by the officer in charge of the defendant bank was not binding under the Negotiable Instrument Act of our statutes. The plaintiff appealed from the order of the court sustaining the demurrer, and the opinion of the court in that cause is found in 79 Okla. 267, 193 Pac. 41, wherein the case was reversed, and remanded for a new trial; the court finding that it was not a suit on the check, but on the transaction in its entirety, based upon fraud, and further found that the evidence offered was sufficient to reasonably sustain the allegations of plaintiff's petition, and that the court was in error in sustaining the demurrer, and in withdrawing the case from the jury.

On the second trial the cause was submitted to the jury and resulted in a verdict for the plaintiff for the amount sued for with interest at the rate of six per cent. from date of the check. Motion for a new trial was filed and overruled, and judgment rendered in accordance with the verdict, from which order and judgment of the court the defendant appeals. Appellant sets forth numerous assignments of error, and in their brief first urge that the court committed error in admitting in evidence certain testimony over the objections and exceptions of the appellant, defendant in the lower court, which is directed at certain portions of the testimony of the appellee, Singer. concerning the conversation had with Byrum, relative to the check given at the time of the sale of the cattle, and prior to the telephone conversation had with the appellant bank, relative to whether or not the check was good, and concerning the calling of the bank for the purpose of investigating the validity of the check. This evidence within itself is not necessarily material or relevant to the issue here involved, but as we regard it. it is merely explanatory of the acts and conduct of the parties leading up to the transactions which are material and relevant, and while not binding in any manner upon the bank, appellant herein, it is in no wise prejudicial to the defendant bank in any particular. The conversation over the telephone, of which the testimony complained of is explanatory, is not denied, but admitted by all parties. The facts that the check was received, that the cattle were delivered to Byrum, and that the payment of the check by the defendant bank was refused are facts about which there is no dispute, and are conceded, consequently the conversation between the appellee, Singer, and the said Byrum relative to the delivery of the cattle, and concerning the validity of the check, and the investigation thereof could not have affected the material issues in this case, and we think it self-evident that the admission of such testimony would not be reversible error. The appellant further complains of certain evidence admitted, the testimony of the witnesses, Curry and Thornton, and Hicks, who were permitted to testify over the objections of the appellant to the conversations or statements made by Walter Wooldridge, and officer of the defendant bank, and brother of B. M. Wooldridge, the officer of the bank who engaged in the telephone conversation with the appellee, Singer. concerning the check at the time of its delivery to Singer and prior to the delivery of the cattle to Byrum. The testimony complained of is concerning conversations had by the witness with Walter Wooldridge in which the said Wooldridge

stated that he was going to turn down the Singer check until his brother B. M. Wooldridge returned, who seems to have been away on a trip for a period of several days at this particular time.

Appellant's contention is based on the theory that the plaintiff in the lower court failed to sufficiently identify the check inquired about, and concerning which the conversations were had, by the various witnesses, and Walter Wooldridge, an officer of the bank, but from the record it seems that it was referred to as the Singer and Byrum check and we think this sufficient identification. In fact this testimony, like the other complained of, is concerning facts about which there is no controversy, for as heretofore stated it is conceded that the payment of the check was refused, and is not sufficient error, if error at all, to constitute reversible error, and appellant cites no authority in support of its contention in this particular.

The second proposition urged by appellant in its brief complains of the action of the court in refusing to give certain requested instructions on the part of the appellant, and in giving certain instructions to the jury, and has called attention to instruction No. 3 given by the court:

"You are further instructed, that fraud is said to be a generic term, which embraces all the multifarious means which human ingenuity can devise, and are resorted to by one individual to get advantage over another by false suggestions or by the suppression of the truth, and that no definite and invariable rule can be laid down as a general proposition defining fraud, as it includes all surprises, tricks, cunning. dissembling, and any unfair way by which another is cheated."

The above is an instruction on fraud in general use in this jurisdiction, and has repeatedly been held to be a correct instruction on that question, and in the absence of any special requested instruction more fully setting forth the elements that may constitute fraud, is a good and sufficient instruction on that question. Wingate et al. v. Render, 58 Okla. 656, 160 Pac. 614, and many other authorities support this rule. In a recent case of Heindselman v. Harper, 91 Okla. 50, 215 Pac. 771, this court held:

"The rule is well established, where the instructions of the court do not cover all phases of the case. that counsel is bound to call the court's attention to omissions by an appropriate request for additional instructions, or be precluded from making such failure available as reversible error."

The next instruction complained of is No.

4, given by the court to the jury, and is as follows:

"You are further instructed, that if you believe from a preponderance of the evidence in this case, that the said W. Byrum did attempt and propose to purchase twenty-five head of cattle from the plaintiff and offered to pay the said plaintiff the said sum of $830.00 for the said cattle, with a check drawn upon the defendant bank, on or about the 6th day of July, 1916, and that before the plaintiff accepted the check in payment for the said cattle, and delivered the said cattle to the said W. Byrum, the said plaintiff had a long distance telephone conversation with the said defendant bank, through its cashier and active officer B. M. Wooldridge, and that in said conversation, the said B. M. Wooldridge told the plaintiff that the check was O. K. and would be paid and that he need have no fear of delivering the said cattle to the said W. Byrum and you further find that the said plaintiff believed the said statement and representation, and relying upon them as being the truth, delivered the said cattle to the said W. Byrum, and would not have delivered the said cattle to the said W. Byrum without the representation and statements from the said defendant bank, and you further find by a preponderance of the evidence that the said B. M. Wooldridge, cashier of the defendant bank, made the said statements with a design and intent to defraud and cheat the said plaintiff, and that the said statements and representations were false and known by the said B. M. Wooldridge, cashier of the defendant bank, to be false at the time they were made, and were made in furtherance of a design upon the part of the said bank to have the said plaintiff to deliver the said cattle to the said W. Byrum, so that the said W. Byrum, to resell the said cattle and deposit the proceeds of the said resale in the defendant bank, so that, before the check given to the plaintiff could through the regular course of business be presented for payment, the defendant bank could apply the proceeds from said resale to the payment of the claim of the defendant bank against the said W. Byrum, if you find any such claims did exist, and that the statements and representations made, if any such were made, without any intention upon the part of the bank to perform the same and you further find that in pursuance of such intent to defraud and cheat the plaintiff, if any such design and intent did exist, the said bank did apply the said funds or proceeds from the said resale deposited in its bank, if you find that any such proceeds from the said sale were so deposited, and then refused to pay the check given by the said W. Byrum to this plaintiff in purchase of the said cattle, then and in that event the bank would be liable to the plaintiff in such an amount as the check and the

protest fees aggregated, and in the amount sued for, with interest at the rate of 6% per annum from the date of the check until paid."

And while this instruction is complained of generally, they especially complain of that portion wherein the jury was directed that in the event they find the defendant bank liable to plaintiff they should render judgment for the amount of the check and protest fee, with interest at the rate of six per cent. from the date of the check until paid. The only possible objection that we see in this instruction, which is a very insignificant error, is that the jury are directed to find interest from the date of the check until paid; it would probably be more correct to have said from the date of presentation of the check to defendant bank until paid, but no objections are made in this particular, but appellant contends that no interest at all should have been allowed, and cite section 2849, Rev. Laws 1910, 5973, Comp. Stat. 1921, which leaves the matter entirely within the discretion of the jury to grant or refuse the same, and also call attention to statement found in 22 Cyc. 581, as follows:

"Where the allowance of interest is discretionary with the jury it is error for the court to instruct the jury either to award or refuse it."

And also cite the case of Oklahoma City v. Hoke, 75 Okla. 211, 182 Pac. 692, and the case of Uhe v. C., M. & St. P. Ry. Co. (S. D.) 54 N. W. 601, in the construction of an identical statute, in support of its contention, but we cannot agree with appellant for the reason that the authorities cited have reference to damage suits of a different character from the one at bar. Section 2848, Rev. Laws 1910. being section 5972, Comp. Stat. 1921, provides:

"Interest upon damages. Any person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor from paying the debt."

This section of the statute. we think controls, rather than the section relied upon by appellant, which is section 5973, Comp. Stat. 1921, which is as follows:

"Jury may allow interest. In an action for the breach of an obligation not arising from contract, and in every case of oppression, fraud or malice. interest may be given in the discretion of the jury."

There seem to be three different rules which apply to different character of actions for damages; the first is that where the damages are certain or capable of being made certain by calculation, and there is a particular date that may be established from which you may reckon interest, and upon which date the plaintiff was entitled to, and should have received, the subject-matter which is the basis of the action for damages, that in such event interest is recoverable as provided by section 5972.

The second rule is set forth in section 5973. Interest may be allowed in the discretion of the jury in an action for the breach of an obligation, not upon contract, and in cases of oppression, fraud or malice.

And, third, there is a class of cases such as personal injury cases, where there are various elements which enter into the measure of damages recoverable, including all expenses incurred by the plaintiff by reason of the injuries complained of, loss of time. physical pain, depreciation in earning capacity, and other elements which the jury take into consideration in computing the amount that the plaintiff is entitled to recover, and in such cases there is no good reason, nor does justice require that interest be allowed until judgment has been obtained for a specific amount: The case at bar, we think, comes within the first rule above set forth: the damages that the plaintiff was entitled to recover are certain, and the date on which he should have received payment of the check is certain and definite, and we think that the instructions complained of, wherein the court directed the jury to find interest for the plaintiff, is correct, and that the instructions taken as a whole are a correct application of the law to the facts in this case.

In the case of Steele v. Kellogg, 163 Mich. 132, 128 N. W. 403, which was an action in fraud and deceit. whereby recovery was sought by a person induced to purchase shares of stock of a corporation, by fraud and deceit, the court held:

"Where money is obtained by fraud, its recovery with interest is compensation, and in an action for damages for the deceit, the court may instruct the jury to add interest."

And in the case of New York, Etc., R. Co. v. Roper. 176 Ind. 497. 96 N. E. 468, there is set forth a very correct statement of the rule:

"The true test to be applied as to whether interest should be allowed before judgment in a given case or not is therefore, not

whether the damages are unliquidated or otherwise, but whether the injury and consequent damages are complete, and must be ascertained as of a particular time and in accordance with fixed rules of evidence, and known standards of value, which the court and jury must follow in fixing the amount, rather than be guided by their best judgment in assessing the amount to be allowed for past as well as for future injury or for elements that cannot be measured by any fixed standards of value."

Appellant complains of other instructions, but we think the discussion heretofore had in this opinion covers all complaints that are material, or that contain any merit whatsoever, in so far as the instructions are concerned.

In the third proposition urged appellant complains that the court below committed error in refusing to give the peremptory instructions requested by the defendant, but we find no merit in such contention. Appellant discusses at great length its contention to the effect that the evidence is insufficient to establish fraud and deceit on the part of the bank in this transaction, but from an examination of the entire record it is evident that the appellee, Singer, and Mr. Wooldridge, managing officer of the appellant bank, had a conversation substantially as alleged by the appellee, wherein he was told that the check was good, and led to believe that it would be paid by the officer of the bank. It is also apparent that a major portion, at least, of the check representing the proceeds of the sale of the cattle by Byrum, the giver of the original check, was used by the bank for the purpose of liquidating the indebtedness of Byrum to the bank, and it is also clear that the bank had knowledge, sufficient to place it on notice, that the deposit placed to the credit of Byrum was the proceeds of the Singer cattle, and we are inclined to the opinion that the evidence is sufficient to sustain the verdict of the jury.

Appellee, among other authorities cited, called attention to the case of Walters National Bank v. Bantock, 41 Okla. 153, 137 Pac. 717, wherein the manner of handling a certain deposit was involved, and in some respects similar to the case at bar, and while it is difficult as a rule in this purpose and design of men by direct and positive proof, there is no question in this case but that the appellee, Singer, was defrauded, and we think the evidence reasonably tends to support the theory that it was designedly done, and the instructions as a whole, we think, are as favorable to the appellant as the facts would justify, in fact the court went further than necessary in our judgment, wherein he instructed the jury that they must find, before they would be entitled to return a verdict for the plaintiff, that the design was present and existing at the time of the conversation, as follows:

"The said B. M. Wooldridge, cashier of the defendant bank, made the said statements, with a design and intent to defraud and cheat the said plaintiff, and that, the said statements, and representations were false and known by the said B. M. Wooldridge, cashier of the defendant bank, to be false at the time they were made, and were made in furtherance of a design upon the part of the said bank to have the said plaintiff to deliver the said cattle to the said B. W. Byrum, so that the said B. W. Byrum, to resell the said cattle and deposit the proceeds of the said resale of the said cattle in the defendant bank, so that before the check given to the plaintiff could through the regular course of business be presented for payment, the defendant bank could apply the proceeds from said resale to the payment of the claim of the defendant bank against the said W. Byrum."

This instruction goes further than necessary, in that it required the jury to find that the design to defraud and cheat had been formed at the time of the conversation relative to the check given in payment for the cattle. This would not be necessary in order to entitle the plaintiff to the relief sought. The design to defraud and cheat if formed at the time or subsequent to the conversation would be sufficient. The material element is the forming of the design at such time and under such circumstances as would enable the bank to defraud the plaintiff, Singer, out of the proceeds of his cattle, and whether formed at the time of the conversation, at the time the deposit was made, or when the money was converted to the use and benefit of the appellant bank, is not material. If the design existed at the time the funds were converted, that would be sufficient, taken in connection with all the other facts and circumstances existing in this case. Byrum had no funds in the bank at the time he gave the check involved and inquired about, and with this knowledge in the possession of Wooldridge, the bank cashier, if he had the design, when he told Singer the check was good, to cheat and defraud the appellee, Singer, and thereby induced Singer to part with his cattle, that would constitute fraud of the most flagrant character, and under section 2101, Comp. Stat. 1921, would subject appellant to a prosecution for larceny by fraud. Section 4996,

Comp. Stat. 1921, defines actual fraud as follows:

"Actual fraud, within the meaning of this chapter, consists in any of the following acts. committed by a party to the contract, or with his connivance with intent to deceive another party thereto, or to induce him to enter into the contract: First. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true. Second. The positive assertion in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true. Third. The suppression of that which is true, by one having knowledge or belief of the fact. Fourth. A promise made without any intention of performing it; or Fifth. Any other act fitted to deceive."

And section 4997 defines constructive fraud as follows:

"Constructive fraud consists: First. In any breach of duty which without an actually fraudulent intent. gains an advantage to the person in fault, or any one claiming under him, by misleading another to his prejudice, or to the prejudice of any one claiming under him; or, Second: In any such act or omission as the law specially declares to be fraudulent, without respect to actual fraud."

Under the facts as disclosed by the record in this case it is difficult to determine which section of our statute or paragraph thereof is applicable and should govern, but clearly such transaction constitutes fraud and the court cannot give its sanction o: consent to a transaction of this character, whereby a deposit of money is procured in such manner and converted to the use and benefit of the bank; we therefore find no sufficient error to justify a reversal of this case, and we therefore recommend that the same be affirmed.

By the Court: It is so ordered.