No. 26,285.

EARL NORTHCRAFT, *Appellant,* v. THE HOME STATE BANK, *Appellee.*

SYLLABUS BY THE COURT. .

1. BANKS AND BANKING—*Agreement to Pay Checks Issued for Live Stock— Trial—Cross-examination.* In an action by a dealer in live stock against a bank to recover the purchase price of certain mules and horses, a general verdict for the defendant was returned, which necessarily included a finding that there was no agreement or authorization by the bank for a purchaser to buy live stock and issue checks on the bank in payment therefor, the proceedings considered, and *held,* certain evidence elicited on cross-examination was neither improper nor prejudicial. .

2. SAME—*Instructions.* The court's instructions to the jury fairly covered the issues and were not improper, nor was there error in the court's refusal to give the instructions requested.

3. SAME—*Generally.* Various alleged errors considered and held not to be of substantial merit.

Appeal from Harper district court; GEORGE L. HAY, judge. Opinion filed April 10, 1926. Affirmed.

*John S. Simmons,* of Hutchinson, and *Edwin C. Wilcox,* of Anthony, for the appellant; *J. Howard Wilcox,* of Anthony, of counsel.

*Donald Muir,* of Anthony, for the appellee.

The opinion of the court was delivered by

HOPKINS, J.: The action was one to recover the purchase price of certain horses and mules. Defendant prevailed, and plaintiff appeals.

The plaintiff resides at Jetmore and deals in horses, mules and other live stock. He made several sales to one Clarence Young during the year 1920, previous to the transaction in question. On September 20 Young purchased from him twenty-one head of horses and mules for $3,367, giving in payment two checks on the defendant bank. On a previous occasion, when plaintiff had received a check from Young, he communicated with the bank to ascertain that the check was good. The checks received by plaintiff September 20 were sent in due course of business and presented to the defendant

Appeal and Error, 4 C. J. pp. 969 n. 56, 1167 n. 94. Banks and Banking, 7 C. J. pp. 698 n. 45, 757 n. 55; 14 R. C. L. 572. Trial, 38 Cyc. pp. 1711 n. 19, 1869 n. 89. Witnesses, 40 Cyc. p. 2501 n. 94.

September 24, when payment was refused because Young did not have sufficient funds on deposit to pay them. Young had shipped plaintiff's stock from Kinsley to Wichita, deposited with the defendant a draft on the Wichita Horse Market for $3,000 and absconded.

The plaintiff alleged, and attempted to prove, that the defendant bank, prior to September, 1920, had entered into a contract with Young, who was to purchase and sell horses and mules; that he was authorized by the defendant to issue checks on the defendant bank to parties from whom he purchased horses and mules, and should deposit the proceeds of the sale of such horses and mules with the defendant bank and said defendant was to pay out of the proceeds of said money so deposited the checks so given by Young for the purchase of the horses and mules and expenses incident thereto; that the transactions in question between Young and the plaintiff were had while Young was working under such arrangement with the defendant bank; that before the presentment of plaintiff's checks to the defendant Young had complied with his part of the agreement with the bank by selling all of the horses and mules procured from plaintiff and deposited with the bank the proceeds thereof, which were sufficient to pay plaintiff's checks; that the bank had full notice and knowledge that the proceeds of the sale of plaintiff's horses and mules, purchased and sold by Young, had been deposited with it before the presentation of the checks, and that the money was then on deposit with the bank for the purpose of paying to the plaintiff the purchase price of the horses and mules, and that defendant wrongfully and unlawfully refused to pay the same.

The answer was a general denial. Trial to a jury. All testimony adduced was by the plaintiff. General verdict for the defendant.

The plaintiff contends that the court erred in permitting the introduction of prejudicial testimony by means of cross-examination of one of plaintiff's witnesses (Mr. Fox, cashier of defendant bank); that defendant was permitted to cross-examine Fox on matters concerning which he had not testified in his direct examination. It appears that certain letters had been introduced by plaintiff and that the cross-examination of Fox was in connection with the letters.

We cannot see that the plaintiff's rights were prejudiced in this regard. The plaintiff required the defendant to produce the letters, and when produced plaintiff offered them in evidence. It was not

improper for the witness on cross-examination to give any pertinent explanation concerning them. The plaintiff complains of the instructions, the giving of some and refusal to give others. He requested an instruction to the effect that regardless of whether there was an agreement or understanding between Young and the defendant with reference to the purchase of mules and the giving of checks therefor, if said checks were presented and the bank knew or had reasonable grounds to believe that the checks were given for mules from which the fund was derived, then defendant is liable to plaintiff.

The defendant says that while this particular instruction was refused by the court, that it was covered by other instructions which were given; that if the case had been decided adversely to the defendant, the instructions given might have been grounds for reversal. The instruction given reads:

"Notice or knowledge mentioned in these instructions does not necessarily mean notice or knowledge of a direct or positive fact, but such notice or knowledge may be inferred from the actions, conduct and statement and course of dealing of the parties."

The defendant contends that the instruction given was extremely beneficial to the plaintiff, but notwithstanding this additional benefit and that all the evidence introduced was by the plaintiff, still the jury found that no contract existed between the defendant and Young; that the funds received just previous to the time that Young absconded were not necessarily funds from the sale of plaintiff's horses and mules; that the bank had no notice or knowledge that the funds were received from the sale of plaintiff's horses and mules; that the bank had no notice or knowledge that the funds were received from the sale of plaintiff's stock.

A letter from Young to the defendant introduced by plaintiff tending to substantiate this theory reads:

"Mr. G. R. Fox:                                 WICHITA, KAN., 9-16-20.

"Sending check for $2,000, and there is more to follow. Did not get all sold out. Am going back out to Belpre to look after some mules I have there, but probably won't buy anything before next week, as I want to see how things look up. I have nearly a load on hand altogether now. I will draw on the W. H. Co. for a part of what I already have bought in a few days so as to clear my account with you. It seems like it is hard to get anything much done. I will likely ship in a week from Wed. and it should be so I could get sold out by then but can't tell. Hope so anyway.     CLARENCE YOUNG."

Northcraft v. Home State Bank.

The testimony showed that Young shipped the last consignment of mules and horses from Kinsley and that the last draft deposited with the Home State Bank was drawn at Belpre. The draft deposited with the defendant dated from Belpre, together with the contents of Young's letter of September 16, warranted the belief by the defendant bank that the draft was for stock which Young had previously purchased and which he was shipping from Belpre or vicinity.

If Young had deposited his sight draft with the defendant bank for the purpose of paying plaintiff's checks, the defendant would have been liable. (Note 30 L. R. A., n. s., 517. Also, 111 Am. St. Rep. 425.) Or, if Young had been purchasing live stock with an agreement with the defendant that it would honor his checks, the defendant would be liable. (*Wood v. Bank*, 91 Kan. 91, 136 Pac. 935; *Saylors v. Bank*, 99 Kan. 515, 163 Pac. 454; *Goeken v. Bank*, 100 Kan. 177, 163 Pac. 636; Id., 104 Kan. 370, 179 Pac. 321; *Scoby v. Bank*, 112 Kan. 135, 211 Pac. 110; Id., 115 Kan. 820, 225 Pac. 122; *Bank v. Bank*, 113 Kan. 352, 214 Pac. 788.) The plaintiff proceeded upon the theory that there was such an agreement, which was denied by the defendant. Whether, under all the circumstances, the bank had made such a contract, or whether the bank had knowledge or notice that the $3,000 draft was from the sale of plaintiff's live stock were questions of fact which the jury resolved in favor of the defendant. The instructions fairly covered the issues presented. We find no error that would warrant a reversal.

The judgment is affirmed.