BOYLE, Appellant, v. VIVIAN STATE BANK, Respondent.

(226 N. W. 579.)

(File No. 6874. Opinion filed August 3, 1929.)

442

M. L. *Parish*, of Murdo, for Appellant.
*Herman L. Bode*, of Murdo, for Respondent.

FULLER, C. Some time prior to the 14th day of August, 1924, one Hubert purchased of plaintiff, Boyle, seven head of horses for $225. On that date the horses were delivered by Boyle to Hubert at the stockyards at Vivian. After delivery of the animals, and their acceptance by Hubert, he, with Boyle and two officers of the Omaha Horse & Mule Commission Company, of Omaha, went into the Vivian State Bank. A transaction there occurred between these parties and one Blunk, a bookkeeper, acting for the bank. Hubert drew a sight draft on the commission company for $600 on account of a load of horses, including the Boyle horses, which he was about to ship. The sight draft was accepted by the bank, acting through Blunk, and the proceeds credited to the checking account of Hubert, which was then overdrawn $20. Hubert then drew a check payable to plaintiff, Boyle, in the sum of $225, stating: "Here is your check, go get your money." The plaintiff, Boyle, addressing the bank's bookkeeper, then said: "Mr. Blunk, I am going to Draper tomorrow with some other checks to use on a note. I want to take this check to Draper and cash

it with the other checks." Blunk responded that "it would be all right." The plaintiff, Boyle, then took the Hubert check for $225 to Draper and there deposited it with the Draper State Bank for collection. In regular course it was presented to the drawee, the Vivian State Bank, and payment was refused for want of sufficient funds. At the time of presentation of the check, Hubert's account with the Vivian bank carried a balance of $205; the Vivian bank having charged an overdraft of $20 and cashed other items against the $600, deposited as aforesaid. After presentment and dishonor of the Boyle check, the Vivian bank charged out the balance of $205 from Hubert's account and credited the same upon a note which Hubert was then owing to the bank. In action below by Boyle, as plaintiff, against the drawee, Vivian State Bank, for the sum of $225, the foregoing transaction, except for evidentiary details, was pleaded, and it was alleged that defendant bank assured plaintiff that his check would be paid when presented; that the bank received the sum of $600 above mentioned as a special deposit for the purpose of paying the check; and that the bank agreed to pay the same.

Trial was had to the court without jury, and, upon findings favorable to the defendant bank, judgment was entered dismissing the action. From the judgment and order overruling motion for new trial, the plaintiff, Boyle, appeals.

 It is appellant's contention that the clear preponderance of the evidence, contrary to an express finding of the trial court, shows, by inference, an agreement on the part of the respondent bank to finance Hubert in the purchase of live stock for shipment; and that the case falls within the rule of Webster v. First State Bank, 50 S. D. 159, 208 N. W. 774. That case is in line with the decisions of Saylors v. State Bank, 100 Kan. 64, 163 P. 454; Wood v. Home Nat. Bank, 91 Kan. 91, 136 P. 935, L. R. A. 1916C, 161; Singer v. Citizens' Bank, 79 Okl. 267, 193 P. 41, 42; Ballard v. Bank, 91 Kan. 91, 136 P. 935, L. R. A. 1916C, 161; Goeken v. Bank, 100 Kan. 177, 163 P. 636; Pierceville State Bank v. Gray County Bank, 113 Kan. 352, 214 P. 788. These decisions represent an established exception to the rule (Rev. Code 1919, § 1835) that the acceptance of check by a bank must be in writing and signed by the drawee. The question determined in Webster v. First State Bank, supra, was whether the drawer of the check, the bank's

customer, as distinguished from the payee, had an agreement with the bank according to which the bank was to pay, on presentation, checks drawn by the customer in connection with his business of buying and shipping live stock. In the absence of direct proof of such contract, reference was had to surrounding circumstances from which the existence of such a contract was inferred.

We will therefore consider, first, whether there was any such contract in this case between the bank and its customer, the stock buyer. To this point, the record has been searched in vain for more substantial evidence than the mere fact that the bank occasionally honored overdrafts in behalf of Hubert, some or most of which checks were issued in connection with his business of buying stock. Beyond inferences deducible from that proof, there is nothing to show the existence of any agreement to honor any particular check of the customer, or any checks drawn for any special purpose, or in connection with any specified business, or to pay checks drawn over any particular period of time. That there was any such contract is denied by the bank's officers, and there is no showing here that the bank made a business of receiving the proceeds of stock shipped by Hubert or that Hubert regularly deposited the proceeds with the bank, nor is any circumstance shown which is common to the facts of the above-cited cases. The finding of the trial court which negatives the existence of such an agreement between the bank and its customer is not against the clear preponderance of the evidence, and, upon the contrary, is well supported by the proof.

■ There being no general agreement between the drawer and drawee of this check for the payment of like items on presentation, we may now consider what specific contract, if any, existed between the parties as to this particular check and its payment. The complaint is not alone based on the issuance, presentation, and dishonor of the check, but upon the whole transaction of which these elements are a part. The trial court not only found the absence of any agreement between the customer and the bank for its financing of his stock-buying business, but also the court found that there was no contract for the payment of this particular check.

Appellant suggests and respondent denies that a trust arose from the transaction of August 14, 1924, at respondent bank, ac-

cording to the decision of Shotwell v. Sioux Falls Savings Bank, 34 S. D. 109, 147 N. W. 288, L. R. A. 1915A, 715; Gibbs v. Commercial & Savings Bank, 50 S. D. 134, 208 N. W. 779. Concerning this it is sufficient to remark that our conclusion in the instant matter is not inconsistent with the several equitable principles discussed in Shotwell v. Sioux Falls Savings Bank, supra. But it is now unnecessary, if not unwise, to advance the doctrine of trusts beyond its application to the particular facts of the cases last cited. There is no reason to undertake an uncharted course when the facts of this case bring us directly to a line of estimable and well-established precedents. By reason of the adoption of the Uniform Negotiable Instrument Act, we are obliged to take note of Rev. Code 1919, § 1891 (5 U. L. A. 510), as follows: "A check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and the bank is not liable to the holder, unless and until it accepts or certifies the check."

Notwithstanding that rule, the doctrine which we may here appropriately consider is that of an equitable assignment of a particular fund from which the check ought, in equity, to be paid. This doctrine may be brought into play where there is an understanding between the drawer and the payee of the check that a specific fund should be appropriated to its payment, and where that arrangement is brought to the attention or knowledge of the drawee bank.

In the case of Fourth Street Nat. Bank v. Yardley, 165 U. S. 634, 644, 17 S. Ct. 439, 440, 41 L. Ed. 855, 861, the United States Supreme Court declared: "While an equitable assignment or lien will not arise against a deposit account solely by reason of a check drawn against the same, yet the authorities establish that if, in the transaction connected with the delivery of the check, it was the understanding and agreement of the parties that an advance about to be made should be a charge on and be satisfied out of a specified fund, a court of equity will lend its aid to carry such agreement into effect as against the drawer of the check, mere volunteers, and parties charged with notice."

And in Equitable Trust Co. v. First Nat. Bank, 275 U. S. 359, 370, 48 S.Ct. 167, 169, 72 L. Ed. 313, 317, Justice Stone recently stated: "There has been no dissent from the view that an agreement to apply a designated credit or account to the payment of a check or

draft drawn upon it creates security in the credit enforceable in equity as against general creditors. Fourth Street Nat. Bank v. Yardley, 165 U. S. 634, 17 S. Ct. 439, 41 L. Ed. 855; Farley v. Turner, 35 L. J. Ch. (N. S.) 710; Coates v. First Nat. Bank, 91 N. Y. 20; Muller v. Kling, 209 N. Y. 239, 103 N. E. 138; In re Hollins, 215 F. 41, 131 C. C. A. 349, L. R. A. 1915B, 438."

In proceeding to apply this principle to the case at bar, we are not deterred by the absence of any express contract or understanding of the parties. A feature of the doctrine of equitable assignment, repeatedly asserted by the courts, is that the agreement may be implied from the surrounding circumstances. Quoting at length to this point from Fourth Street Nat. Bank v. Yardley, supra, Justice Rogers in Re Hollins, supra, L. R. A. 1915B, 438, 440, emphasizes the point that: "It is not necessary that there should be an express agreement. An implied agreement is sufficient. * * * In transactions of the nature of that under consideration, the surrounding circumstances may be considered with the view of determining the intention of the parties."

See, also, Merchants' Nat. Bank v. State Bank, 172 Minn. 24, 214 N. W. 750, 752.

With assurance that the above doctrine, as a principle of equity, invades neither the letter nor the spirit of Rev. Code, 1919, § 1891, supra, we may now consider whether the facts of this case bring it within that doctrine; and, since there is no expressly stated agreement, reference will be made to the circumstances surrounding the transaction at the defendant bank on August 14, 1924. The parties had just come from the stockyards where appellant had delivered to Hubert his horses at the sale price of $225. The horses, with others, were about to be shipped to the commission firm at Omaha. Hubert's account at the bank was then overdrawn $20. Hubert went to the bank with the two officers of the commission firm, and with appellant, to acquire the means of paying for appellant's horses. Appellant accompanied him to receive payment. That this intention of the drawer and payee of the check became apparent to the bank's representative cannot reasonably be questioned. At the bank Hubert did not merely draw a check to appellant, using the banking house as a convenient place for its execution. He was first obliged to acquire the money for payment to appellant by drawing a draft of $600 upon the commission house, whose officers were

present. He acquired an advance of that sum for the particular carload of animals which included appellant's stock. Having caused that sum to be deposited to his account, he drew his check to appellant and said: "Here is your check, go get your money." Instead of presenting the check then and there for payment, appellant addressed the bookkeeper, who appeared to be in charge of the business of the bank and who had accepted the sight draft and credited Hubert's account with the proceeds. To him appellant said that he wanted to take the check with other checks and cash it at a Draper bank the next day, to use on a note. The banker said: "That is all right." It is a clear inference from the record that the foregoing was but one brief and uninterrupted transaction between all the parties, including Blunk, the bank's bookkeeper, who participated for the bank.

That the clearest possible expressed contract was not then and there made by Hubert to assign $225 of the $600 to appellant, with the bank apprised of that contract, is plainly due to the surrounding circumstances which rendered superfluous any further expression, by either party to the other, of his intention and understanding. Hubert was at the bank to acquire money for the specific purpose of paying appellant for his horses. Appellant was there to receive that payment. The $600 draft was cashed and deposited, in part, to pay Hubert's check to Boyle. Taking the check in the presence of the banker and remarking that he would cash it the next day at Draper was an expression of an intention to present the check as a matter of convenience in a certain way, and that he was innocent of any doubt as to its payment. Boyle's failure to go and get his money as directed by Hubert must be held to have conveyed to the bank that Boyle was influenced by a confidence that $225 had been placed in the deposit and would there remain to pay the check. The banker's response, "That is all right," could have carried no other interpretation under the circumstances than that the deposit would be preserved for the purpose of paying the check. Under the circumstances, the statement of the banker was an assurance that what appellant proposed to do would accomplish the object which appellant obviously had in mind.

In passing, it should be noted that the probative facts and the equitable characteristics of the foregoing transaction are not unlike the record in the case of First State Bank v. Stockmen's State

Bank, 42 S. D. 585, 176 N. W. 646, in which case Judge Polley applied the principle of estoppel, and in which case, on account of the bank's affirmative representations to the plaintiff, it was held to be estopped to deny liability. In the interests of continuity, with precedents of this court, it may be pointed out that the doctrine of the equitable assignment of a particular fund from which a check should be paid is largely evolved from the application of the principle of estoppel to facts comparable with the facts of this case. See discussion of Coates v. First Nat. Bank, 91 N. Y. 26, in the case of Fourth Street Nat. Bank v. Yardley, 165 U. S. 634, 17 S. Ct. 439, 41 L. Ed. 862, supra.

It is our conclusion from the undisputed evidence that Hubert, the drawer of the check, intended to obtain, on account of the shipment of Boyle's horses, the sum of $225; that he deposited the same at the Vivian State Bank on August 14, 1924, with the intention of having it applied to the payment of plaintiff's check; that respondent bank was well aware of that intention and of the implied agreement of the parties which was apparent from the transaction in which they all participated. Equity, therefore, will lend its aid to enforce the performance of that agreement.

Respondent suggests that the bookkeeper, Blunk, had no authority to bind defendant bank to the liability above shown. But, in the absence of argument or cited authority, it will be considered that a bank's bookkeeper, authorized to accept and cash a sight draft for its customer, may bind the bank to any knowledge he acquired in the transaction as to the purposes of the deposit and the person for whose benefit it is to be appropriated.

The judgment and order appealed from are reversed.

CAMPBELL, BURCH, and BROWN, JJ., concur.

POLLEY, J., concurs in reversal of judgment appealed from.

SHERWOOD, P. J., absent.