No. 19,304.

NICHOLAS MALLINGER and JOSEPH MALLINGER, Partners, etc., *Appellants*, v. MAX SARBACH, *Appellee*.

### SYLLABUS BY THE COURT.

EVIDENCE—*Based on Hearsay—Inadmissible.* A witness testified that he had no recollection of a conversation with the plaintiff in which he related to the plaintiff statements made to him by the defendant, but if a conversation took place between himself and the plaintiff, any thing he said to the plaintiff was true. *Held*, that this does not render competent the testimony of the plaintiff as to what the forgotten statement was.

Appeal from Jackson district court; OSCAR RAINES, judge. Opinion filed March 6, 1915. Affirmed.

*M. A. Bender*, of Holton, *T. F. Garver*, and *R. D. Garver*, both of Topeka, for the appellants.

*A. E. Crane*, of Atchison, *F. T. Woodburn*, *E. D. Woodburn*, *I. T. Price*, and *Charles Hayden*, all of Holton, for the appellee.

The opinion of the court was delivered by

PORTER, J.: The appellants sought to recover on a note for $2500, signed with the names of Albert Sarbach and L. Sarbach's Sons. The names were both signed by Albert Sarbach, who in his lifetime was a member of the copartnership consisting of himself and his brother, Max Sarbach. The sole controverted fact involved in the case was his authority to sign the firm name to the note. John Q. Myers, president of a bank at Holton, made the loan for the appellants, and the only question raised by the appeal involves the admissibility of certain evidence offered by the appellants which the court excluded. The appellants sought to show that Max Sarbach knew of the giving of this note, and told Myers that his brother had authority to sign

the firm name. Myers was called as a witness and testified that he had no recollection of having a conversation with Max Sarbach with reference to Albert's authority to sign the name. He testified:

"Q. After Albert Sarbach's death, do you remember of having a talk with N. Mallinger on the street a little west of your bank, with regard to the signing of this note? A. I can't just call to mind that conversation, but I don't doubt but what I had a conversation with him, especially after it was learned that L. Sarbach's Sons claimed that they were not liable on the note."

He was then asked the following question:

"Q. . . . If, a short time after Albert Sarbach's death, . . . you had a conversation with N. Mallinger and told him about the signing of this note, . . . with the firm name, and you made a statement to him with regard to what Max Sarbach knew about it, was what you told Mr. Mallinger at that time true? A. Yes, sir; any statement that I made to Mr. Mallinger was true, as I thought, certainly."

Nicholas Mallinger was then called and testified that soon after Albert Sarbach's death, he had a conversation with Myers with reference to what Max Sarbach knew about the signing of the note. He was asked to state what John Q. Myers said at that time with reference to what Max had to do with the signing of the note, and what, if any, conversation John Q. Myers said he had with Max about it. An objection to the question was sustained and the witness was not allowed to answer. The appellants being unable to prove that Max Sarbach authorized his brother to sign the firm name to the note, the district court sustained a demurrer to the evidence.

The question therefore is whether Mallinger's testimony in proof of the fact was admissible. It is the contention of the appellants that this character of testimony can not be called mere hearsay, because it is the combined testimony of two sworn witnesses tending to prove a material, ultimate fact, and is admissible upon

the ground of necessity as secondary evidence. We can not agree with this contention. The cases cited by counsel do not, in our opinion, sustain the theory that testimony of this character is ever admissible. The rejected testimony does not fall within any of the known exceptions to the hearsay rule.

The doctrine that original entries made by a witness are admissible as auxiliary to his evidence is said to rest upon the principle of necessity for the reception of secondary evidence, but the earlier cases held that even original entries made by a witness are not admissible unless it appear that he does not recollect the occurrence to which they relate independently of them. (*Nat. Ulster County Bank v. Madden*, 114 N. Y. 280, 21 N. E. 408.) But the modern rule is more liberal and lets in the testimony of both the witness and the memorandum upon proof that they were made in the usual course of business, or in conformity with the uniform and unvarying practice to make correct notes of that character (1 Wharton, Law of Evidence, § 518) ; or when the witness is able to testify that at or about the time the memorandum was made he knew its contents and knew them to be true (*Wright v. Wright*, 58 Kan. 525, 50 Pac. 444; *Acklen's Executor v. Hickman*, 63 Ala. 494). In the former case it was held that an official court stenographer may read his notes of testimony as evidence upon a subsequent trial without testifying to an independent recollection of such testimony, if he is able to testify that he knew he had taken such testimony correctly.

In the present case, however, there was no memorandum or writing made, either by the witness whose testimony was excluded or by any other person in his presence, so that the reasons for an exception to the general rule rejecting hearsay testimony because of the reliance placed upon original entries is wanting. The rule upon which appellants rely is stated to be that where two or more persons in the whole furnish sworn testimony to the existence of a fact it is the evidence in

the aggregate which is to be viewed in the testimonial light, and no part of it is hearsay.

It is hardly necessary to consider the extent or application of the rule itself, because this case does not present the question. We have not here the sworn testimony of two witnesses to the existence of a fact. As observed, Myers' testimony is to the effect that he has no recollection of the particular conversation with Mallinger. All we have to start with is his general statement that in any conversation he may have had with Mallinger anything said by him therein was certainly true. Any witness asked such a question will answer it in the affirmative.

Except for the failure of the appellants to establish one of the necessary links in their chain of evidence, the case of *Shear v. Van Dyke,* 17 N. Y. Supr. Ct. 528, cited by them, would be directly in point, and would be an authority in favor of their contention. The question in issue in that case was the number of loads of hay delivered at a particular time. The witness stated that he could not then remember the number; that he knew at the time and then told the plaintiff. Subsequently plaintiff was called as a witness and was allowed to state what the number was. It was held by a divided court that the evidence was admissible. Here, however, the foundation is lacking for the application even of the exception allowed in *Shear v. Van Dyke,* supra. It is not necessary, therefore, to decide whether that authority should be followed in a proper case or not. John Q. Myers did not testify that he had a conversation with Mallinger in which he told Mallinger what Max Sarbach had said. On the contrary, his testimony is that he has no recollection of such a conversation, and it is not a sufficient foundation for the introduction of such testimony to ask a witness whether or not, if he did make a statement to another witness at a certain time, he then told the truth, and this is in substance all the record shows Myers' testimony amounts to.

A similar situation arose in the case of *Clute v. Small,* 17 Wend. (N. Y.) 238. The plaintiff sought to prove an admission made by the defendant to the sheriff at the time of the service of the writ, and was permitted to prove the contents of a letter written by the sheriff to plaintiff's attorney, in which he reported the admission or statements made by the defendant. The letter being lost, the sheriff testified he could not recollect its contents nor could he recollect what the defendant had said to him when he served the writ, but that whatever he wrote was undoubtedly as stated to him by the defendant. The reviewing court held that the evidence was inadmissible, and in the opinion Cowen, J., used this language:

"The inquiry here was no more than the common one to a witness: Would you have asserted such a matter unless it had been true? and on obtaining the witness' affirmative answer, going on to prove what he did say." (p. 240.)

In 16 Cyc. 1198, the following rule is stated:

"Where a witness testifies that he has truly stated to a third person of his own knowledge a fact which he has since forgotten, he thereby renders competent the testimony of that party as to what the forgotten statement actually was."

The only authority cited in support of the text is *Shear v. Van Dyke,* supra, which, as before observed, was by a divided court. Another case cited by appellants is *Gillotti v. State,* 135 Wis. 634, 116 N. W. 252. The case itself is opposed to the contentions of appellants, although there is a dissenting opinion by three of the justices based largely on the decision of *Shear v. Van Dyke,* supra, which it approves and follows. The question in that case was this: The complaining witness in a prosecution for robbery testified that he described one of the robbers shortly after the offense was committed to the sheriff, who was then permitted to testify that such description was given him, and the nature of it. The majority of the Wisconsin court held

that notwithstanding the preliminary statement of the complaining witness that he had given a description to the sheriff, the testimony of the latter was incompetent as hearsay.

It is well said by counsel for the appellee, "the best evidence of a conversation between Max Sarbach and Myers would be the testimony of the participants." Since Myers testified that he had no recollection of such conversation, the only person who could testify to it was Max Sarbach himself, who was not called as a witness. The leading case on the subject of hearsay testimony is said to be the opinion of Chief Justice Marshall in *Mima Queen and Child v. Hepburn,* 11 U. S. 290, 3 L. Ed. 348, where it was held:

"Hearsay evidence is incompetent to establish any specific fact which is, in its nature, susceptible of being proved by witnesses who speak from their own knowledge." (Syl. ¶ 1.)

Our conclusion is that the evidence was not admissible, and the judgment will be affirmed.