No. 23,601.

Ross Scoby, *Appellee,* v. The Bird City State Bank et al., *Appellants.*

SYLLABUS BY THE COURT.

1. Action Against Bank—*Refusal to Pay Check—Death of Drawer of Check —Action Survived.* In an action against a bank for its refusal to pay a check which it was alleged that it had agreed to pay, pursuant to a business arrangement between it and the drawer, the death of the drawer, who was a codefendant, did not require the abatement or dismissal of the action. It could proceed against the bank without bringing in the representative of the deceased codefendant.

2. Same—*Pleadings—Evidence.* Under the issues raised by the pleadings, an objection to the introduction of evidence was properly overruled.

3. Same—*Incompetent Testimony—Nonprejudicial.* Certain incompetent testimony examined, and held immaterial and nonprejudicial.

4. Same—*Hearsay Evidence.* Other testimony which violated the rule against hearsay considered, and held to be incompetent and prejudicial.

5. Same—*Excluded Evidence—When Not Reviewable.* Rule followed, that excluded evidence which was not brought on the record in support of a motion for a new trial presents nothing for review.

6. Same—*Instructions.* Record examined and no error discerned in the instructions given or refused, nor in overruling defendants' motion for judgment on the special findings.

7. Same — *Check for Cattle Given to One of Two Joint Owners — Right of Holder of Check to Recover Entire Amount.* Where, pursuant to an understanding between two cattlemen, one sells cattle belonging to both and receives a check in payment for all the cattle, and the check is wrongfully dishonored, the payee of the check may maintain an action to collect the entire amount.

8. Same—*Identity of Cattle for Which Check Was Drawn.* The evidence was sufficient to make it a jury question to determine whether the cattle sold

by the plaintiff were traced into a consignment for the receipt of which the consignee honored and paid the sight draft drawn against such shipment.

9. Shipment of Cattle—*Sight Draft Deposited in Bank—Credit Given Depositor—Check Drawn by Depositor—Rights of Payee of Check.* Where a sight draft is drawn and deposited in a bank to be forwarded for collection, and credit is given to the drawer thereon, and a check is drawn against the credit account of such depositor, and the bank is advised that the sight draft and the check are complementary to each other, it is immaterial that the draft was drawn some hours or a day before the check was issued, and the bank cannot devote the proceeds of the draft to the payment of other claims which it may have against the drawer to the prejudice of the payee of the check.

Appeal from Cheyenne district court; Willard Simmons, judge. Opinion filed November 4, 1922. Reversed.

C. A. P. Falconer, of Atwood, and E. E. Kite, of St. Francis, for the appellants.

J. L. Finley, of St. Francis, W. S. Langmade, and E. E. Howard, both of Atwood, for the appellee.

The opinion of the court was delivered by

Dawson, J.: This was an action against a bank to compel payment of a check drawn in favor of the plaintiff by a cattle buyer who was alleged to be doing business on bank credit by virtue of an arrangement whereby the defendant bank was to honor the cattle buyer's checks and the cattle buyer was to deposit sight drafts drawn on a commission house which was the consignee of the cattle thus purchased.

It appears that early in the year 1918, two business men, Jennings and Roller, who had good standing with the defendant bank, called upon the bank's officers. They were accompanied by George E. Witham, a cattle buyer. They proposed an arrangement to which the bank's officers agreed that Witham should buy cattle and issue checks on the bank in payment therefor, that Witham should draw sight drafts on Jennings and Roller and deposit them to his credit in the bank, and that they would honor such drafts by paying them out of the proceeds of the cattle when marketed. Pursuant to this arrangement Witham bought cattle and paid for them by checks which the bank honored; sight drafts on Jennings and Roller were drawn by Witham, deposited in the bank, presented to Jennings and Roller, and paid. Credit was given to Witham on these drafts. After this arrangement had been pursued for about three months, these three men, Jennings, Roller and

Witham, again called at the bank, and Jennings and Roller said to the bank's officials that Witham was doing business successfully and that it was needless that he should draw drafts on them any longer, and they proposed that thenceforward Witham should draw sight drafts directly upon the Woods-Egan Live-stock Commission Company at Kansas City, the consignee to whom the cattle bought by Witham were usually shipped. The bank acquiesced in this proposed change in the earlier arrangement; and thereafter for some months this altered practice was adhered to. Witham bought cattle, gave checks in payment on the defendant bank and drew sight drafts on the Kansas City firm and deposited these with the bank, and the Kansas City firm honored the sight drafts. Sometimes Witham's account was overdrawn, and there was some testimony for defendant that not in every instance would the bank pay Witham's checks when he had overdrawn; but it was also shown that with increasing frequency as time progressed the bank paid his checks for cattle regardless of temporary overdrafts upon his bank account.

On October 5, 1918, Witham purchased 25 head of cattle from plaintiff and gave him a check for $2,746 on the defendant bank in payment therefor. About the same time, perhaps on the previous evening, Witham deposited in the bank a sight draft on the Woods-Egan Commission Company for $3,500. On October 8, on receipt of a shipment of 51 cattle from Witham, the commission company paid the sight draft. The plaintiff deposited Witham's check for $2,746 in a bank in St. Francis and it arrived at the defendant bank on October 10, where it was dishonored and protested. Hence this lawsuit.

Issues were joined; the cause was tried before a jury. Verdict and special findings favorable to plaintiff were rendered, and judgment was entered thereon.

It is first urged by defendant that the action should have been abated or dismissed when it was shown that Witham, codefendant, had died before the trial. But Witham was not a necessary party, and the plaintiff's right of action survived against the bank under the issues joined. (Civ. Code, § 421; 1 C. J. 232.)

Touching the defendant's objection to the introduction of evidence, the petition sufficiently pleaded the agreement, the mode of defendant's business pursuant thereto, the receipt by the bank of the proceeds of the sale of the cattle by the payment of the sight

draft for $3,500, and the bank's duty and dereliction. The objection was properly overruled. (*Goeken v. Bank,* 100 Kan. 177, 163 Pac. 636; *id.,* 104 Kan. 370, 179 Pac. 321.)

Error is assigned in the admission of certain testimony. A witness, Harry Scoby, over objection, testified to conversations he had with Witham at various times during 1918 when Witham told him he was buying and selling cattle and shipping them to the Woods-Egan Live-stock Commission Company. This was immaterial, and moreover that fact was not in dispute. Elsewhere this witness narrated a conversation which he had with Witham a few days after October 5, in which Witham stated: "I can't take your cattle, boys, the bank has quit me." This testimony was incompetent, but it, too, was immaterial. The bank had "quit" him; that fact was not in dispute; it "quit" him when it declined to honor his check of October 5.

More serious, however, was the admission of the testimony of O. A. Laird, of Wray, Colo. Laird testified that in 1919 he had a conversation with Witham about the shipment of cattle and payment of checks and his arrangements for their payment at the defendant bank during the summer and autumn of 1918.

"Q. 7. What was that conversation?" [Objection. Overruled.]

"Q. 11. Commence at the beginning. A. What conversation I had with him?

"Q. 12. Yes, sir. A. Well, he was making explanation in regard to how he got into this business." [Objection. Overruled.]

"A. He said he had got behind with the bank at Bird City and they told him to go out and buy some cattle, that his luck would change. This explanation he makes to me, and said that he came around the second time he was still further behind with the bank and they told him to draw a sight draft on his commission firm for Three Thousand Dollars to cover his shortage at the bank, and he said he did so, and then he got kicked or crippled some way with a horse and he said that when the time came to make this shipment he had nothing to ship and the bank told him to wire his commission firm 'Not shipping anything to-day,' which he done he said. And then he said the bank advised him to go out and buy something which he did, for next Saturday's shipment, is the statement he made to me."

Counsel for appellee virtually concede that this evidence was incompetent, but argue that it was nonprejudicial. The court is unable to yield to that excuse for such a palpable violation of the simplest of all rules of the law of evidence—the imperative necessity for the exclusion of mere hearsay which has the fatal defect of depending on the unsworn veracity of another person than the

witness.  (*Stark v. Cummings,* 5 Kan. 85; *Kansas Pacific Rly. Co. v. Pointer,* 9 Kan. 620; *Muscott v. Hanna,* 26 Kan. 770, syl. ¶ 3; *Crawford v. Crawford,* 60 Kan. 126, 55 Pac. 842; *Miller v. Mc-Dowell,* 63 Kan. 75, 64 Pac. 980; *Mallinger v. Sarbach,* 94 Kan. 504, 146 Pac. 1148; *The State v. Henson,* 105 Kan. 581, 588, 185 Pac. 1059.)

This testimony could not possibly fall within any of the exceptions to the hearsay rule; and its prejudice to the defendant was manifest.  One of the chief contentions of the bank was that it had not agreed to honor Witham's checks regardless of the state of his account.  The incompetent testimony that the bank's officers were urging defendant to go out and buy cattle and that they told him to draw a sight draft on the commission house when he had no cattle to ship and to deceive or mislead the commission· house with a telegram, "Not shipping anything to-day," was open to the most prejudicial inferences that a jury could draw touching the defendant's business practices and was bound to shake their credence in any testimony the bank's officers might give in its behalf.

Noting other matters urged in defendant's brief, the court can discern no error in overruling the demurrer to the plaintiff's evidence.  It is argued that without the incompetent testimony of Laird touching what Witham had told him there was no evidence to show any arrangement or agreement between the bank and Witham that the bank would pay his checks for cattle.  The court cannot assent to that contention.  While the bank officers testified that there was no such agreement, yet even their testimony as to how the bank dealt with Witham, together with the record of Witham's account with the bank during the late summer and autumn of 1918, went a long way towards establishing the agreement, although, of course, the jury might not have taken that view of the matter if the prejudicial and incompetent testimony of Laird had not been admitted to supplement it.

Another error urged relates to the exclusion of certain testimony offered by defendant, but this does not appear to have been pressed on the trial court's attention in a motion for a new trial, and the excluded evidence has not been brought on the record so as to permit its review.  (*Scott v. King,* 96 Kan. 561, 567, 152 Pac. 653; *The State v. Ball,* 110 Kan. 428, 432, 204 Pac. 701.)

Some fault is found with the trial court's instructions, but these seem to be clear statements of the law pertinent to the issues.

The defendant was not entitled to judgment on the special findings, nor to have them set aside.

A minor point is that plaintiff did not own all the cattle. But he sold them and Witham gave him the check in payment. The owner appears to have authorized their disposition by plaintiff and that he should receive the payment therefor. It is elementary that one person may assign what is due to him for mere purposes of collection. (*Currant v. Lenger,* 107 Kan. 107, 190 Pac. 432, syl. ¶ 2.) Furthermore, no issue on this point was raised in the pleadings.

It is also argued that plaintiff's cattle were not traced into the consignment received by the commission house about October 8. Harry Scoby's testimony touching the loading and shipping of the cattle on October 5 and the other evidential incidents seem to show that this point was merely another jury question.

In a belated reply brief, defendant seeks to magnify the point that the $3,500 draft was drawn before the plaintiff's cattle were purchased. That was a mere item of evidence whose significance was for the jury's consideration. If the draft was drawn in contemplation of the purchase of cattle and plaintiff's cattle were purchased and shipped to the drawee pursuant thereto, and the draft was paid because of the receipt of such shipment, and the defendant knew that the proceeds of the draft contained the proceeds of plaintiff's cattle before it protested the check and otherwise disposed of the sum realized on the draft, a premature drawing and depositing of the sight draft would not be fatal to plaintiff's recovery. Moreover, the evidence inherent in the circumstances tended to show that the bank concurred and acquiesced in the drawing of the draft on October 4 and dating it October 5.

Because of the admission of incompetent and prejudicial testimony the judgment must be reversed and another trial ordered; but it is needless to go over the whole case again. (Civ. Code, § 307; *Harris v. Drenning,* 101 Kan. 711, 717, 168 Pac. 1106.) In the new trial granted, only two questions will need attention.

First, if the evidence shows that the proceeds of the sale of plaintiff's cattle were included in the $3,500 paid by the Woods-Egan Commission Company, and if the defendant bank was so informed before it devoted that money to the payment of Witham's overdrafts or otherwise disposed of it, defendant is liable.

Second, if the evidence shows that during the summer and

Bank v. Bank Commissioner.

autumn of 1918 there was an arrangement or understanding be-
tween Witham and the bank that he was to draw checks on the
bank to pay for cattle purchased by him and that he was to deposit
sight drafts with the bank drawn on the commission company for
cattle shipments, and that the bank would honor and pay such
checks regardless of the state of Witham's account, the defendant
is liable.

If plaintiff can establish either of these propositions to a jury's
satisfaction, he is entitled to judgment; otherwise defendant is en-
titled to judgment.

Reversed and remanded for a new trial in accordance herewith.