No. 25,837.

M. W. MORAVEK, *Appellee,* v. THE FIRST NATIONAL BANK OF JEWELL CITY, *Appellant.*

SYLLABUS BY THE COURT.

1. CONTRACTS—*Evidence—Sufficiency.* There was evidence which tended to prove a contract between a shipper of live stock and a bank for the payment of all checks given by the shipper for live stock purchased, upon his depositing in the bank drafts on the consignees of such live stock when shipped.

2. BANKS AND BANKING—*Deposits—Application to Debts Due Bank—Rights of Third Parties.* Following *Scoby v. Bank,* 112 Kan. 135, 211 Pac. 110, it is held that a bank does not have the right to appropriate to the payment of its claims the deposit arising from the payment of drafts given under the circumstances described in the first paragraph of this syllabus until after the checks given for the purchase of the live stock have been satisfied.

3. SAME—*Stopping Payment of Checks.* Under the contract described in the first paragraph of this syllabus, payment of checks given by a purchaser and shipper of live stock to those from whom live stock is purchased cannot be stopped by the purchaser where the bank has given the purchaser credit for drafts drawn on the consignees of the live stock and has received the money on those drafts.

Appeal from Jewell district court; WILLIAM R. MITCHELL, judge. Opinion filed July 11, 1925. Affirmed.

*R. W. Turner, D. F. Stanley, R. B. Turner,* all of Mankato, and *R. C. Postlethwaite,* of Jewell City, for the appellant.

*D. M. McCarthy,* of Mankato, *A. W. Relihan, T. D. Relihan* and *J. T. Reed,* all of Smith Center, for the appellee.

1. Contracts, 13 C. J. § 977. 2. Id., 13 C. J. § 660. 3. Id., 13 C. J. §§ 426, 429.

The opinion of the court was delivered by

MARSHALL, J.: The plaintiff sued to recover on four checks given by E. H. Getman, one to the plaintiff for $1,650, one to R. Kindler for $1,642.20, one to P. F. Thaete for $1,550, and one to O. E. Hills for $408.60, the last three of which checks had been assigned to the plaintiff by the payees named therein. Judgment was rendered in favor of the plaintiff, and the defendant appeals.

The petition alleged that a contract existed between Getman and the defendant by which the defendant agreed that when Getman deposited sight drafts drawn on consignees of live stock shipped and sold by him, the defendant would pay all checks issued by Getman in payment for live stock. That question was submitted to the jury. The jury returned a verdict in favor of the plaintiff for the full amount of all the checks. Special questions were answered as follows:

"1. Do you find that prior to April 2, 1923, any oral contract was entered into between the defendant and E. H. Getman relative to the honoring of checks drawn upon defendant by Getman for the purchase of live stock? A. Yes.

"2. If you answer question number 1 'yes,' then state: (*a*) The date thereof? A. Prior to April 3-5, 1923. (*b*) The terms under which defendant was to pay E. H. Getman's checks? A. By depositing sight drafts against consignee. (*c*) With what officer or officers of the defendant such contract was made? A. Kreamer, cashier.

"3. At the time the defendant applied $3,816.17 of the account of E. H. Getman to the payment of his note, did it have any notice of any rights of Moravek, Thaete, Hills or Kindler or any of them to have such account applied to the payment of any checks drawn to their order? A. Yes.

"4. If you answer question number 3 'yes,' then state when and from whom and with respect to what checks any such notice was obtained? A. They had sight draft and checks from Moravek and others.

"4. At the time the defendant applied $3,816.17 of Getman's account to the payment of his note, did it have knowledge or notice that certain persons held checks against the account so applied for stock they had sold Getman? A. Yes.

"5. If you answer question No. 4 'yes,' or in the affirmative, then were the persons so holding said checks, Moravek, Thaete, Hills and Kindler? A. Moravek, Hills, Kindler.

"6. Do you find that the proceeds from the sale of the stock sold by Moravek, Hills, Thaete and Kindler were included in the sight drafts of $1,500 drawn and deposited on April 3, 1923, and of $3,000 and $1,200 drawn and deposited on April 5, 1923? A. Yes.

"7. If you answer the preceding question, No. 6, in the affirmative, then do you find that there was outstanding and unpaid checks given for the pur-

chase price of live stock for which the drafts mentioned in question 6 were drawn and that the bank and its officers had knowledge of such fact before it applied the $3,816.17 of Getman's account to the payment of his note? A. Yes."

Facts which the evidence tended to prove, but which were not found by the jury in the answer to special questions, were as follows: Getman purchased live stock from each of the persons to whom he gave the checks involved in this action. When the live stock was shipped to market Getman drew on the consignees for $5,700. The drafts were paid and the proceeds thereof were received by the defendant. At the time the drafts were made the defendant gave Getman credit on his checking account for the amount of the drafts. Getman owed the bank $3,816.17 on a demand note which was secured by a chattel mortgage on live stock and other property. When the drafts were deposited the defendant learned that a portion of the mortgaged live stock had been sold without the previous knowledge or consent of the bank. The bank then took $3,816.17 out of the amount on deposit to the credit of Getman and applied it in discharge of the note. Afterward other amounts were deposited by Getman in the bank and other checks given by Getman were paid. None of the checks sued on were paid. Getman afterward directed that none of the checks be paid. All of the checks, except the one to F. P. Thaete for $1,550, had been presented before that direction was given. The reason given by the bank for its refusal to pay the checks to Moravek, Kindler and Hills was that Getman did not have on deposit funds sufficient to pay those checks. The reason given for the refusal to pay the check of F. P. Thaete was that Getman had instructed the defendant not to pay.

1. The defendant contends that there was no evidence to prove the contract alleged in the petition. There was evidence which tended to prove that Getman had been doing business with the defendant bank for a number of years; that Getman was engaged in purchasing and shipping live stock; that he kept his account with the defendant bank; that when he shipped live stock he would draw on the consignees for an amount slightly less than the value of the shipment, and would deposit the draft with the defendant, which gave credit to Getman therefor; that the difference between the draft and the amount for which the shipment sold was deposited by the consignee in banks to the credit of the defendant; that Getman drew checks on the bank to pay for the live stock purchased by him; and that the checks thus drawn by Getman were paid by the

defendant before returns were received from the drafts drawn on the consignees of live stock shipped by Getman. The assistant cashier of the bank testified in part as follows:

"[She was] asked if it was customary to give immediate credit to a customer for any sight draft drawn and deposited, say for $10,000, without inquiry, she answered, 'Well, it depends a little on who is drawing the draft.'

"Q. And it would depend on what other arrangement had been had before, and you knew what he was buying with it? A. Not necessarily any prearrangement.

"We gave immediate credit for the draft of $10,000. We only do that with a few. I don't remember any one besides Mr. Getman who bought stock under the same arrangement he had there."

The evidence was sufficient to warrant the jury in finding that the arrangement made between Getman and the bank was as alleged in the petition.

2. Another question which must be disposed of is the right of the defendant to take $3,816.17 out of the account of Getman and apply it on the demand note held by the bank. When the Moravek, Hills and Kindler checks were presented there would have been enough on deposit to have paid them if the defendant had not appropriated $3,816.17 to the payment of the note owing to it by Getman. The jury found that the defendant had notice that the checks given to Moravek, Hills and Kindler had been given for live stock sold by Getman, and that the proceeds from the sale of the stock sold by Moravek, Hills, Kindler and Thaete were included in the sight drafts which made up the credit of $5,700. This brings the present case within *Scoby v. Bank,* 112 Kan. 135, 211 Pac. 110, where this court said:

"Where a sight draft is drawn and deposited in a bank to be forwarded for collection, and credit is given to the drawer thereon, and a check is drawn against the credit account of such depositor, and the bank is advised that the sight draft and the check are complementary to each other, it is immaterial that the draft was drawn some hours or a day before the check was issued, and the bank cannot devote the proceeds of the draft to the payment of other claims which it may have against the drawer to the prejudice of the payee of the check." (Syl. ¶ 9.)

The defendant could not escape liability on those checks by taking from the credit of Getman and applying the amount taken on the note when the bank knew that the checks were given for live stock sold by the payees to Getman, who drew the drafts on his consignees for the purpose of providing the funds out of which the checks should be paid.

3. Another question is the right of the bank to refuse payment of the checks on the direction of Getman. Payments of checks by banks have been compelled under similar circumstances in *Ballard v. Bank,* 91 Kan. 91, 136 Pac. 935; *Saylors v. Bank,* 99 Kan. 515, 163 Pac. 454; and *Bank v. Bank,* 113 Kan. 352, 214 Pac. 788. *Scoby v. Bank,* supra, denied the right of a bank to appropriate the deposit of a customer to the payment of a claim held by the bank against the customer where a check had been given under circumstances similar to those in the present case. In all these cases the holders of the checks had enforcible claims against the banks. Applying to the present case the principle followed in the cases cited, it must be held that each of the persons to whom checks were given by Getman in the purchase of live stock had an enforcible claim against the bank on those checks, and it must be held that Getman could not stop payment of any of those checks.

Other questions presented by the defendant concerning the instructions to the jury and the sufficiency of the evidence to support the findings of the jury have been examined. Those contentions cannot be sustained.

The judgment is affirmed.