No. 26,889.

W. A. Stout, *Appellee*, v. D. F. Carter and George Gilmore, *Appellants*.

SYLLABUS BY THE COURT.

1. Evidence—*Hearsay*. Error assigned on the exclusion of hearsay testimony considered and not sustained.

2. Mortgages—*Absolute Deed as Mortgage—Evidence—Findings*. In an action in ejectment where plaintiff held title under deeds executed to him by defendant, the findings of fact and evidence on which they were based, considered, and held not to require a judgment for defendant on the ground that the plaintiff's deeds were in effect but an equitable mortgage to secure the repayment of money loaned by plaintiff to defendant.

3. Same—*Evidence—Findings*. The entire record, including the evidence and trial court's findings of fact, considered, and neither want of equity nor error of law discerned in the judgment entered therein.

Appeal from Wichita district court; Roscoe H. Wilson, judge. Opinion filed December 11, 1926. Affirmed.

*W. C. Dickey,* of Leoti, and *H. O. Trinkle,* of Garden City, for the appellants.

*J. Graham Campbell, Ray Campbell,* both of Wichita, and *R. D. Armstrong,* of Scott City, for the appellee.

The opinion of the court was delivered by

Dawson, J.: The plaintiff, W. A. Stout, brought this action in ejectment to obtain possession of 960 acres of Wichita county land to which he held title by quitclaim and warranty deeds executed by the defendant, D. F. Carter.

The defense was that the deeds were intended to have the legal effect of an equitable mortgage to secure the return of a sum of money loaned by plaintiff to defendant. Plaintiff's version of the transaction was that he had bought the land for $8,000, with a year's option that defendant might repurchase it for $10,000.

Touching the more important facts developed at the trial, it appears that in February, 1922, defendant, D. F. Carter, was the owner of the property in controversy, but it had been subjected to a mortgage-foreclosure sale and the period of redemption was about to expire. To save Carter's rights the plaintiff, Stout, and defend-

Ejectment, 19 C. J. p. 1178 n. 30. Evidence, 22 C. J. p. 199 n. 36. Mortgages, 41 C. J. p. 354 n. 62; 37 L. R. A. n. s. 521; L. R. A. 1916B 55; 19 R. C. L. 244.

ant, Carter, made an oral agreement, the exact nature of which was the chief question in dispute in this lawsuit, pursuant to which Carter gave Stout a quitclaim deed to the property, and Stout sent his attorney and agent from Wichita to Scott City to redeem it from the sale in foreclosure. Stout contributed $8,000 for that purpose and Carter contributed the requisite balance, $678.63. The quitclaim deed was executed and delivered on February 18, 1922, and the property redeemed on February 23, 1922, just five days prior to the expiration of the redemption period. On February 23 Carter gave Stout a warranty deed to the land and executed a contract in which he agreed to pay the taxes for 1920 and 1921, then past due.

On the following day, February 24, 1922, Stout executed a reconveyance of the property by warranty deed in favor of Carter and placed that deed in a Wichita bank to be delivered to Carter upon payment of $10,000 on or prior to February 24, 1923, and on the same day the depositary notified Carter of its receipt and apprised him of the terms of the escrow.

Defendant did not take up the deed according to the terms of the escrow; and during the succeeding years he has paid neither rent, taxes, nor interest, but continued in possession of the premises and appropriated the rents and profits to his own use.

On August 8, 1924, plaintiff brought this action in ejectment, alleging his ownership and right to possession, the wrongful possession of defendant, the reasonable value of the use, rents and profits, and prayed for possession and damages.

The pleaded defense was a general denial. At the trial, defendant testified that in February, 1922, he went to see the plaintiff and that—

"He [defendant] discussed with Stout this matter, and Stout made various suggestions as to where he might get the money; that he explained to Stout that he had seen Brown & Crummer [money loaners] and that they would furnish $7,500, and I would have to put up the balance and give a deed to the property, and have twelve months in which to take it up, and they to receive $10,000 in a year, making them a bonus of $2,500, and Mr. Stout said that was too much. . . . And he finally made me the proposition that he would let me have $8,000 if I would clean up everything in the way of the title, provided I would take care of the balance, and the time of the redemption period was so near I was willing to do most anything agreeable to Stout to get the money; that he made him the proposition of $8,000 and $2,000; that is, $8,000, and me raise the balance. . . .

"Q. In your conversation there with Mr. Stout, was it stated what the $2,000 was to be for? A. Well, it was a matter of him furnishing the $8,000 and me paying him back the $2,000 at the end of twelve months.

"Q. What proposition was that, his or yours? A. Mr. Stout's proposition."

Plaintiff's version of these negotiations was that defendant Carter came to see him and proposed that plaintiff should buy the property; that at first he declined to do so and sent defendant to see Brown & Crummer, the money loaners. Plaintiff testified:

"Carter went to see them, and then came back to see me, and proposed that if I would buy the land on a basis of $8,000 and give him an option to purchase it back at the end of a year, and possession of the ground, he would pay the taxes and any deficit there was between the $8,000 and pay him $10,000, and if he did not do that, then the land was Stout's. . . . That there was a conversation at that time about an option on the property; that an option was mailed to him by Carter, and he filled it out, but decided it was better to put up a deed, because he was in Texas most of the time, and if the deed was in the bank, he could go in and take it up without seeing him [Stout]. Otherwise the place was to be the plaintiff's with no obligation on the part of any other party."

The cause was tried without a jury. Extended findings of fact were made, but the precise question whether the transaction testified to by the litigants was an outright conveyance of the property to Stout with an option to reconvey upon payment of a specified price, or whether the deeds of February 18 and 23, 1922, were merely an equitable mortgage to secure the repayment of a loan of $8,000, was not squarely decided.

The trial court's conclusion of law was—

"That the plaintiff should have judgment against the defendant for the possession of the real property in controversy and for the sum of $655.40, unless the defendant pays to the plaintiff, on or before the 31st day of July, 1925, the sum of $11,987, with interest thereon at the rate of six per cent per annum from June 1, 1925, in which event plaintiff shall execute to defendant a good and sufficient deed to the premises in controversy."

Judgment was entered accordingly, hence this appeal.

Defendant first assigns error in excluding the evidence of a local bank cashier who knew about Carter's journey from Leoti to Wichita in February, 1922. This banker would have testified that defendant "told the witness that he had borrowed the money from Stout while in Wichita to redeem his land from the foreclosure suit." That evidence was clearly incompetent; it did not bind Stout.in any way; Stout did not overhear that statement, and had no opportunity to deny it. (*Scoby v. Bank*, 112 Kan. 135, syl. ¶ 4, and citations, 211 Pac. 110.)

Appellant next argues that judgment should have been rendered in his favor on the trial court's findings of fact. He cites items of

testimony and certain evidentiary incidents noted in the findings which did tend in some degree to support the view that the transaction between the litigants was that of a loan secured by deeds which were in effect a mortgage. On the other hand, there was ample evidence to support the position maintained by plaintiff. In addition to plaintiff's own testimony, there was the potent significance of the deeds of February 18 and 23, 1922, conveying the property to Stout and the precarious situation of defendant at the time, when his right of redemption from the foreclosure sale was about to expire; and there was the fact that upon the redemption being effected and on the receipt of defendant's warranty deed of conveyance, plaintiff immediately executed a reconveyance and deposited it in escrow, and defendant was promptly notified by the depositary that it held that deed in his favor subject to his payment of $10,000 on or before February 24, 1923. If the escrow did not correctly state the conditions of defendant's agreement with plaintiff he should have challenged its accuracy at the time. Defendant's failure to question the terms of that escrow—his long acquiescence in them—was evidence of highly persuasive character in this lawsuit. *Qui non improbat, approbat.* These evidential incidents, together with other evidence in the record, furnish ample support for the qualified judgment entered in plaintiff's behalf. (*Root v. Wear*, 98 Kan. 234, 237, 238, and syl. ¶ 4, 157 Pac. 1181.) Moreover, the testimony and evidential circumstances give little support to defendant's claim that the transaction was a loan and mortgage. If the transaction was of the character testified to by defendant, a loan of $8,000 to be repaid in a year with $2,000 additional as interest, bonus, or what not, the oral contract to that effect would have been usurious and unenforceable. But the record does not convincingly show the existence of any debt owed to plaintiff which defendant could be compelled to pay. (*Hoyt v. National Bank*, 115 Kan. 167, 222 Pac. 27; *Kolar v. Eckhardt*, 119 Kan. 518, 524, 525, 240 Pac. 947.) In view of all the testimony together and the significant evidentiary circumstances, it would not do for this court to upset the trial court's judgment and declare that the equitable relationship of mortgagee and mortgagor, rather than that of optioner and optionee, correctly defined the status of these litigants.

We have noted the fact that the trial court did not expressly determine what the relationship of the parties was, but after making

extended findings of fact, to which neither litigant took exceptions, the court did enter an equitable judgment which showed marked solicitude for the predicament of defendant. When that judgment was entered, nearly three years had passed since the property was conveyed to plaintiff, yet defendant still held possession of it, nor had he paid one cent as plaintiff's debtor or tenant, nor had he paid any taxes as owner of the property. Plaintiff might have some complaint to make of this judgment, but neither error of law nor miscarriage of justice is discernible of which defendant can rightfully complain.

The judgment is affirmed.

HARVEY, J., concurs in the result.