No. 29,684.

The Drumm-Standish Commission Company, *Appellee*, v. The Farmers State Bank of Neosho Falls, *Appellant*.

(297 Pac. 725.)

Opinion filed April 11, 1931.

*Bennett R. Wheeler, S. M. Brewster, John L. Hunt, Virgil V. Scholes* and *Margaret McGurnaghan,* all of Topeka, for the appellant.

*Frederick G. Apt,* of Iola, *J. Walter Farrar* and *O. C. Phillips,* both of Kansas City, Mo., for the appellee; *A. R. Enfield,* of Iola, of counsel.

The opinion of the court was delivered by

HUTCHISON, J.: This was an action by the Drumm-Standish Commission Company, a corporation of Kansas City, Mo., against the Farmers State Bank of Neosho Falls, Kan., for conversion, in which judgment was rendered for the plaintiff, and the defendant appeals.

The petition alleged in detail a transaction with one W. Wiggins, or Walter Wiggins, of Neosho Falls, the town where the defendant bank was located, concerning the purchase of 120 head of cattle to be sold at auction by Wiggins at Downs, whereby the plaintiff company was to be paid the purchase price and commission and Wiggins was to have all the excess, if any; that they were sold for something less than the cost, but Wiggins received a draft for the amount of the sale; that Wiggins prior to this transaction had other business relations with plaintiff in the cattle business, and for the purpose of keeping plaintiff's funds separate from his own consulted with the officers of the defendant bank and they suggested that he open a new account for that purpose in the name of W. Wiggins No. 2, which he did, depositing a draft then made on plaintiff; that the cashier of the defendant bank, knowing that Wiggins had received a draft for the sale of these cattle, asked him why he had not deposited the draft for collection, and Wiggins informed him that it all belonged to the plaintiff and he was waiting to get the balance and intended to remit the same to plaintiff; that the cashier agreed with him if he would deposit the draft in the bank for collection the proceeds would be placed in the special account of W. Wiggins No. 2 and be held by the bank for the use and benefit of the plaintiff; that relying upon that promise and agreement Wiggins deposited the draft in that special account and three days later asked the assistant cashier to prepare a check for the plaintiff for the balance of the special account, viz., $3,784.11, which was done, and it was signed by Wiggins and sent to plaintiff, who at once deposited it for collection, and when returned in due course to defendant bank it was protested and the funds used by the bank to pay obligations of Wiggins and his partner to another bank having the same president as the defendant bank.

The answer was a general denial.

At the close of the plaintiff's evidence before the court and jury the court overruled the demurrer of the defendant to the evidence of the plaintiff. The only evidence offered by the defendant was a further cross-examination of Wiggins as to four checks issued by him prior to this transaction on this bank account No. 2, and the evidence of the president of the bank to the effect that a $600 item of deposit in Wiggins' account No. 2, made some time prior to this transaction, was derived from a loan made to Wiggins personally in Emporia, which has been paid.

The court sustained the demurrer of the plaintiff to the evidence of the defendant and also the motion for judgment for the plaintiff and rendered judgment for plaintiff for the amount of the check with interest, and discharged the jury.

Appellant assigns as error the overruling of the demurrer of the defendant to the evidence of the plaintiff and sustaining the demurrer of plaintiff to the evidence of the defendant and the rendition of judgment for plaintiff, and urges particularly that the account W. Wiggins No. 2 was not a special account containing money belonging only to the plaintiff; that the 120 head of cattle sold at Downs, Kan., from which the deposit in question was derived, were sold outright by plaintiff to Wiggins, and that Wiggins was simply a debtor of the plaintiff and the fund derived from the sale of the cattle was his, not theirs; that there was no promise on the part of the bank to pay the proceeds of the draft to plaintiff, and that there were jury issues which should have been submitted to the jury.

Many authorities are cited by appellant to show that plaintiff could not rely upon the check which was sent it by Wiggins, yet both parties agree that this is not an action upon the check, but one for conversion. Of course, there was a jury issue made by the pleadings and litigants were entitled to a trial of those issues by a jury. But that right is lost if at the conclusion of the taking of testimony there is no conflict in the testimony given.

The only evidence offered by the defendant had reference to items in the account No. 2 which antedated the present transaction and had to do only with the nature and character of account No. 2. An action of this kind could be maintained if it were based on the first and only transaction of the kind. So the matter of the character of account No. 2 is only an incident to the main transaction, which was the making of a special deposit of the proceeds of these 120 cattle as belonging to the plaintiff and the promise and agree-

ment of the officers of the bank to so receive it. The further cross-examination of the witness Wiggins was not out of harmony with his testimony in chief about issuing checks on account No. 2 to himself and others for gasoline and other expenses in connection with work and business done for plaintiff.

The only other evidence offered by the defendant was that $600 some time ago went into this account No. 2 that did not come from the plaintiff. Would that render the account other than one of a special fund if it otherwise was? Appellant cites the opinion in the case of *Saylors v. Bank,* 99 Kan. 515, 163 Pac. 454, to show that the arrangement between a depositor and a bank about cashing his checks was in that case a jury issue. There was a controversy in that case as to what the agreement was. The bank claimed the original arrangement had been changed and the bank was not then going as far as it formerly had been going, and rebuttal evidence was used to meet the controverted point. There was no conflict of evidence in the case at bar along this or any other line. There was a similar conflict in the evidence in the case of *Ballard v. Bank,* 91 Kan. 91, 136 Pac. 935, cited by appellant. Even if $600 did get into account No. 2 which was not furnished by the plaintiff, such mingling of Wiggins' individual funds with the special trust fund of the plaintiff would not change the character of the special fund so as to relieve the bank of its promise or agreement. Had it been the other way and the fund reduced by $600, withdrawn for individual use of Wiggins, the bank would still be liable for the balance in its hands, if it had made such a promise as alleged. (7 C. J. 646.)

The demurrer to the evidence of the defendant was properly sustained because the one item of evidence did not constitute any defense and there were no controverted facts to submit to the jury.

The remaining question is, Was there sufficient evidence to support the judgment? There was the evidence of Wiggins informing the cashier that the money represented by the draft did not belong to him but to the plaintiff after the cashier had asked him why he had not deposited the draft, and that the cashier said to him—

"Well, you put that money in here so we will get the use of it. . . . You take and deposit that money here, and I will give you my word of honor that it will never be molested."

The following is part of the testimony of the assistant cashier:

"Wiggins came to the bank one morning, and said he wanted to send a draft or a cashier's check. I told him he could just send a check, and I pre-

pared a check for him. Exhibit No. 2 is that check. That was for the balance."

As to the starting of account No. 2 some time earlier, the assistant cashier testified about Wiggins wanting to keep separate from his own fund $1,000 belonging to plaintiff as follows:

"He came in and said Drumm-Standish had instructed him to draw a draft against him, or against them, for $1,000 to buy cake with to feed cattle. He said, 'I want to fix it so it will be kept separate from the other account.' He says, 'How could you do it?' I says, 'I would put it in W. Wiggins account No. 2, and sign your checks that way, and you can keep it separate,' and he did, and I made the deposit myself and started it."

This first deposit slip so made out by the assistant cashier was introduced in evidence, and is as follows:

"St. Dft. on Drumm Standish Com. Co.............. $1,000.
To buy feed for cattle............................. $1,000."

There was also evidence of the protest of the check and the appropriating of the funds by the bank to take up obligations of Wiggins and his partner McCool, which had been theretofore held by another bank, without the knowledge or consent of the plaintiff or Wiggins.

We think there was ample evidence to establish this deposit as a special one for the use and benefit of the plaintiff, and to establish the agreement and promise of the bank, there not being a word of evidence to dispute the agreement, but on the contrary, to the honor and credit of the cashier, who did not testify in the case, it was stated by the assistant cashier that he told the assistant cashier after the check was protested "that he was sorry that it happened, because he had promised Walter that nothing would happen to it."

Authorities are cited by appellant from other jurisdictions to show that funds deposited in a bank for a specific purpose but subject to the depositor's check remain the property of the depositor and are subject to the right of set-off. But such is not the rule in this state as was settled, if not earlier, in *Ballard v. Bank,* supra, where it was said:

" 'All the authorities are agreed upon the rule of law declared in the above case, that a bank which accepts a deposit of money made by a depositor for a special purpose, under an agreement that it will pay the amount when needed for that purpose, cannot rightfully appropriate such deposit to discharge the depositor's indebtedness to it.' (Note, 30 L. R. A., n. s., 517; see, also, Notes, 111 Am. St. Rep. 425; 2 Ann. Cas. 206; 19 Ann. Cas. 488.) It is not necessary, in order for this rule to apply, that there shall be what is strictly and technically known as a 'special deposit.' It is enough that there

is an agreement for a particular application of the fund. The bank's right to a lien upon deposits is not of such character that it may not be waived." (p. 94.)

The syllabus in this case goes very much further than is necessary for the determination of the case at bar; it is:

"Where a national bank through its president agrees with a customer, who is indebted to it, that if he purchases live stock and in payment therefor gives checks on the bank, the checks will be paid provided that by the time they are presented the drawer shall have resold the stock and deposited the proceeds with the bank, and in pursuance of such agreement the customer issues checks in payment for stock which he at once resells, delivering the proceeds to the bank, the holder of such checks can maintain an action for their amount against the bank, notwithstanding he did not know of the agreement, and notwithstanding nothing was said at the time the deposit was made about the agreement or the application of the funds." (Syl.)

"The defendant insists that no cause of action was stated because the acceptance of a check is not binding unless in writing, and because the payee of an unaccepted check cannot maintain an action thereon against the bank for want of privity of contract. The answer to both contentions is that the action is not brought merely upon the check, but upon the entire transaction." (*Goeken v. Bank,* 100 Kan. 177, 179, 163 Pac. 636.)

"Where a sight draft is drawn and deposited in a bank to be forwarded for collection, and credit is given to the drawer thereon, and a check is drawn against the credit account of such depositor, and the bank is advised that the sight draft and the check are complementary to each other, it is immaterial that the draft was drawn some hours or a day before the check was issued, and the bank cannot devote the proceeds of the draft to the payment of other claims which it may have against the drawer to the prejudice of the payee of the check." (*Scoby v. Bank,* 112 Kan. 135, syl. ¶ 9, 211 Pac. 110.)

"There was evidence which tended to prove a contract between a shipper of live stock and a bank for the payment of all checks given by the shipper for live stock purchased, upon his depositing in the bank drafts on the consignees of such live stock when shipped.

"Following *Scoby v. Bank,* 112 Kan. 135, 211 Pac. 110, it is held that a bank does not have the right to appropriate to the payment of its claims the deposit arising from the payment of drafts given under the circumstances described in the first paragraph of this syllabus until after the checks given for the purchase of the live stock have been satisfied." (*Moravek v. First National Bank,* 119 Kan. 84, syl. ¶¶ 1, 2, 237 Pac. 921. See, also, *Bloomheart v. Bank Commissioner,* 114 Kan. 786, 221 Pac. 279; *Putnam v. Hedville State Bank,* 127 Kan. 534, 274 Pac. 231; and *Gardner v. Farmers· State Bank,* 128 Kan. 603, 278 Pac. 737.)

It is urged that the evidence does not show this agreement was made for the benefit of plaintiff, and that Wiggins and plaintiff apparently acquiesced in the action of the bank in appropriating the

742

money for some time thereafter. As to the first point, the evidence shows no other than plaintiff could possibly be benefited by the agreement, and Wiggins plainly told the cashier it was for the benefit of plaintiff. Wiggins explains the delay on his part by saying he was in debt to the bank and thus under obligations to it, and he did not know what to do. Plaintiff's place of business was in Kansas City, Mo., and no affirmative act of acquiescence is suggested, nothing but the delay of more than two months in commencing this action and in the meantime demand had been made for payment. The time was not unreasonable and cannot be regarded as an acquiescence.

We find no error in the rulings of the court and in rendering the judgment for plaintiff, nor in overruling the motion for a new trial.

The judgment is affirmed.

SLOAN, J., not participating.